CHARLES WILSON and RALPH MORTON v. STATE.

184 So. 31.

Division A.

Opinion Filed October 18, 1938.

*Jack Kehoe,* for Plaintiff in Error;

*George Couper Gibbs,* Attorney General, and *Tyrus A. Norwood,* Assistant Attorney General, for the State.

BUFORD, J.—Writ of error brings for review judgment of conviction under an information filed in the Criminal Court of Record in and for Dade County, Florida, as follows, to-wit:

"THE STATE OF FLORIDA v. CHARLES WILSON AND RALPH MORTON.

"INFORMATION FOR OPERATING A GAMBLING HOUSE.

"IN THE NAME AND BY AUTHORITY OF THE STATE OF FLORIDA:

"Robt. R. Taylor, County Solicitor for the County of Dade, prosecuting for the State of Florida, in the said County, under oath, information makes that Charles Wilson and Ralph Morton of the County of Dade and State of Florida, on the 3rd day of January in the year of our Lord one thousand nine hundred and thirty-eight, in the County and State aforesaid, did then and there unlawfully and feloniously have, keep, exercise and maintain a gaming room for the purpose of gaming and gambling, located at what is commonly known as Britton & Morton, 196 N. W. 36th Street, Miami, Dade County, Florida, the said defendants having directly and indirectly the charge, control and management of said gaming and gambling room, exclusively and with others, and did then and there procure, suffer and permit certain persons whose names are to the County Solicitor unknown, to play for money or other valuable thing, at a certain game of chance, to-wit: Betting upon result of a contest of skill between beasts, to-wit: races between horses at a place or places to the County Solicitor unknown, and a further and more particular description of same game of chance, to-wit:

"Betting upon the result of a contest of skill between beasts, to-wit: races between horses at a place or places to the County Solicitor unknown, being to the County Solicitor unknown, contrary to the form of the Statute in such cases made and provided, and against the peace and dignity of the State of Florida.

"Robt. R. Taylor, County Solicitor,
"Dade County, Florida.'

"State of Florida, County of Dade.

"Personally appeared before me, Robert R. Taylor, County Solicitor for Dade County, Florida, who being first duly sworn, says that the allegations as set forth in the fore-

going Information are based upon facts that have been sworn to as true, and which, if true, would constitute the offense therein charged.

"ROBT. R. TAYLOR, County Solicitor,
"Dade County, Florida.

"Sworn to and subscribed before me this 3rd day of January, A. D. 1937.

"W. CECIL WATSON, Clerk of the Criminal Court
of Record, Dade County, Florida.
"By Leila M. Duval, Deputy Clerk.

"Seal Criminal Court of Record."

There are a number of assignments of error which we cannot say are without merit but we shall only deal with two questions presented.

To the information the defendant Wilson filed plea in abatement in which it is alleged:

"That on the 3rd day of January, 1938, the said Charles Wilson was forcibly and against his will, taken by deputy sheriffs of Dade County, Florida, who were acting under the color of their office, as such deputy sheriffs, to the office of the County Solicitor of Dade County, Florida, on the 12th floor of Dade County Court House, and that the said Charles Wilson, after having been so taken to the said County Solicitor, as aforesaid, was informed by the said Robt. R. Taylor, the duly appointed, qualified and acting County Solicitor of the Criminal Court of Record in and for Dade County, Florida, that he, the said County Solicitor, wanted to obtain from the said Charles Wilson certain information as to alleged gambling operations at the place where the said Wilson was employed and the said County Solicitor stated to the said Charles Wilson—'I am giving you a chance to turn State's evidence, if you will

give us the information we seek you will not be prosecuted if not, you will be prosecuted and sent to Raiford.' "

"Whereupon the said Charles Wilson fully and truthfully answered all questions propounded to him by the said Robt. R. Taylor, County Solicitor.

"The questions propounded and the answers given in connection therewith being recorded by a stenographer in the office of the said Robt. R. Taylor, County Solicitor.

"That the purpose of the inquiry and investigation conducted by the said Robt. R. Taylor as aforesaid, and the purpose and reason for propounding questions and interrogatories to the said Charles Wilson by Robt. R. Taylor the County Solicitor, as aforesaid, was to procure and obtain testimony, evidence and information preliminary to filing an information and to prosecute such persons as may be guilty of a violation of the criminal laws of Florida.

"The said Charles Wilson further relates unto the Court that relying upon the promise made to him by the County Solicitor, as aforesaid, and pursuant to the provisions of Chapter 8311 of the Compiled General Laws of 1927, he could not refuse to answer the questions propounded upon the ground of self incrimination, and that he was, by law, required to answer said questions, and that said law granted to such person answering such questions immunity from prosecution, or from being subjected to any penalty or forfeiture on the ground of any transaction, matter or thing concerning which he may so testify or produce any evidence."

"The said Charles Wilson further gives the Court to understand and be informed that he was questioned by the said Robt. R. Taylor, aforesaid, or and concerning the subject matter contained in the body of the information filed in this cause; that he gave and disclosed to the said Robt. R. Taylor, as aforesaid, all knowledge and information that

he, the said Charles Wilson, had of and concerning the subject matter of the investigation aforesaid, and that by so doing he is immune from prosecution of said offense, as provided in Chapter 8311 of the Compiled General Laws of the State of Florida.

"WHEREFORE, the said Charles Wilson says that the State of Florida and the said Robt. R. Taylor, County Solicitor as aforesaid, are estopped from further prosecuting the said Charles Wilson under the information herein and that the said Charles Wilson is immune from prosecution upon said charge, under and by virtue of the provisions of the said Section 8311 of the Compiled General Laws of the State of Florida, and that prosecution on information aforesaid should be abated as to this defendant, and this defendant discharged from custody and permitted to go hence without day."

To this plea the State, by its solicitor, filed demurrer upon three grounds. The demurrer was sustained. So the first question which we will discuss is whether or not the demurrer to the plea in abatement was properly sustained.

Section 6017 R. G. S., 8311 C. G. L., provides as follows:

"No person shall be excused from attending and testifying or producing any book, paper or other document before any court upon any investigation or proceeding or trial, for a violation of any of the statutes of this State against bribery, burglary, larceny, gaming or gambling or of any of the statutes against the illegal sale of spirituous, vinous or malt liquors, upon the ground or for the reason that the testimony or evidence, documentary or otherwise, required of him may tend to convict him of a crime or to subject him to a penalty or forfeiture, but no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concern-

ing which he may so testify or produce evidence, documentary or otherwise, and no testimony so given or produced shall be received against him upon any criminal investigation or proceeding."

By the demurrer the State contended that the plea in abatement was not sufficient to show the facts necessary to bring the defendant within the provisions of the statute above quoted. The demurrer admits as true the allegations of the plea. An investigation of crime and the taking of testimony in regard thereto by the County Solicitor is as much a court proceeding as is an investigation of crime and taking of testimony in regard thereto before a grand jury and we must hold that the allegations of the plea in abatement were sufficient, if true, to show that the accused was entitled to the protection accorded under Section 8311, *supra.*

Aside from this, the plea in abatement alleged a contract and agreement on the part of the County Solicitor with the accused which was proposed by the County Solicitor in the following language:

"I am giving you a chance to turn State's evidence, if you will give us the information we seek you will not be prosecuted; if not, you will be prosecuted and sent to Raiford."

And this proposition was accepted by the accused as alleged in the following language:

"The said Charles Wilson further relates unto the Court that relying upon the promise made to him by the County Solicitor, as aforesaid, and pursuant to the provisions of Chapter 8311 of the Compiled General Laws of 1927, he could not refuse to answer the questions propounded upon the ground of self incrimination, and that he was, by law, required to answer said questions, and that said law granted to such person answering such questions immunity from

prosecution, or from being subjected to any penalty or forfeiture on the ground of any transaction, matter or thing concerning which he may so testify or produce any evidence."

While in the case of Ingram v. Prescott, Sheriff, 111 Fla. 320, 149 Sou. 369, we held:

"Although it is universally conceded that the district attorney, or other public prosecutor may, with the consent of the court, enter an agreement with an accomplice that if he will testify fully and fairly, in a prosecution against his accomplices in guilt, he shall not be prosecuted for the same offense, and that if the accomplice performs on his part, he is entitled to such protection as the law affords, yet the weight of authority upholds the proposition that if such an agreement is made with the prosecuting attorney alone, without the consent or advice of the court, it is of no effect as a protection to the accomplice, if he is afterwards placed on trial in violation of that agreement. State v. Graham, 41 N. J. L. 15; 32 Am. Rep. 174; People v. Peter, 48 Cal. 251; People v. Bruzzo, 24 Cal. 41; United States v. Ford, 99 U. S. 594, 25 L. Ed. 399; Lindsay v. People, 63 N. Y. 143; Commonwealth v. Woodside, 105 Mass. 594; Wight v. Rindskopf, 43 Wis. 344."—we think that the rule will not apply to the prosecution of that class of offenses embraced in Section 8311 C. G. L., *supra,* because in such cases the prosecuting attorney merely recognizes the force and effect of the statute and agrees to that which the law imposes.

It is true that the plea in abatement does not allege that the accused, Wilson, was under subpoena to appear before the County Solicitor but it does show that the accused "was forcibly and against his will taken by deputy sheriffs of Dade County, Florida, who were acting under the color of their office as such deputy sheriffs, to the office of the County Solicitor of Dade County, Florida, on the 12th floor

of the Dade County Court House and that the said Charles Wilson after having been so taken to the said County Solicitor as aforesaid was informed by the said Robt. R. Taylor, the duly appointed, qualified and acting County Solicitor of the Criminal Court of Record in and for Dade County, Florida, and that he, the said County Solicitor, wanted to obtain from the said Charles Wilson certain information as to alleged gambling operations at a place where the said Wilson was employed."

So it appears that while the testimony was not lawfully obtained, his attending and testifying before the County Solicitor was procured by force and against the will of the accused.

The defendant filed motion to quash, which was overruled. The 5th ground of the motion was:

"Because the said information is void and does not charge a criminal offense against any of the laws of the State of Florida."

A like motion was filed as on behalf of the defendant Morton which was also denied. At the close of the evidence there was a motion for a directed verdict, two grounds of which were as follows:

"Because the evidence is wholly insufficient to sustain a verdict of guilty.

"2. Because it affirmatively appears that the information charges an offense with having been committed on an impossible date, for that it appears from the Jurat of the County Solicitor, to the Information, that the Information was sworn to and subscribed to on the 3rd day of January, 1937, while the said Information attempts to charge an offense with having been committed on the 3rd day of January, 1938."

That motion was denied.

Then there was a motion in arrest of judgment after conviction, the 5th ground of which was as follows:

"Because the said Information is void in that it was sworn to and found prior to the date the offense is alleged to have been committed, in that the Information charges that an offense was committed on the 3rd day of January, 1938, and the Information was sworn to and returned on the 3rd day of January, 1937."

It will be observed that the record shows that the Information charged the offense to have been committed on the 3rd day of January, 1938. The Jurat shows that it was sworn to on the 3rd day of January, 1937.

In Marks v. State, 115 Fla. 497, 155 Sou. 727, we gave full effect to the Jurat attached to an information, saying:

"Such jurat imports absolute verity so long as it stands unimpeached as part of the judicial record of the cause and cannot be averred against by merely alleging that the County Solicitor did not do the things that the Jurat by its recitals attributes to him. To warrant an abatement of an information on the ground that it was not sworn to by the County Solicitor in cases where a Jurat is attached to the information properly reciting that it was sworn to, the defendant must aver facts tending to show that the Jurat attached to the information is false and fraudulent and therefore should be held for naught because falsely and fraudulently made."

So the Jurat in this case must be taken as absolutely true. See also State v. Peeler, 107 Fla. 615, 146 Sou. 188.

In Joyce on Indictments, page 348, Sec. 319, the author says:

"It is a general rule that an indictment is fatally defective if it charges the commission of the offense as subsequent to the date upon which the indictment is found or on an otherwise impossible date. So it has been declared that if the

indictment lay the offense on an uncertain or impossible day, as where it lays it on a future day, or lays one and the same offense on different days, or lays it on a day which makes the indictment repugnant to itself, it will be void. And an indictment which charges the commission of an offense on a date subsequent to the finding of the indictment will not be sustained though it is provided by statute that no indictment shall be regarded as insufficient by reason of a failure to state the time when the offense was committed or for stating it imperfectly unless time is of the essence of the offense." * * *

Cited as authority for the text is the case of McGehee v. State, 26 Ala. 154, in which it was held:

"Under an indictment for resisting process, if the time of the commission of the offense is shown by the indictment itself to have been after the return day of the process, it is fatally defective on error."

And support of the text will be found in Terrell v. State, 165 Ind. 443, 75 N. E. 884; Walters v. State, 5 Iowa 507; Commonwealth v. Aultmire, 22 Ky. Law Rep. 511, 58 S. W. 369; State v. O'Donnell, 81 Me. 271, 17 At. 66; Serpentine v. State, 1 How. 256; Markley v. State, 10 Mo. 291; State v. Pratt, 14 N. H. 456; State v. Jones, 8 N. J. L. 307; State v. Sexton, 3 Hawks 184; State v. Woodman, 3 Hawks 384; Commonwealth v. Nailor, 29 Pa. Super. Ct. 271; Joel v. State, 28 Tex. 642; Womack v. State (Tex. App.) 19 S. W. 605; State v. Litch, 33 Vt. 67.

A case directly in point is that of People v. Weinstein, 255 Ill. 530, 99 N. E. 589, in which the Court said:

"The information was defective and should have been quashed, because it was sworn to on July 3, 1909, while it charged the offense to have been committed on July 18, 1909. The same certainty of allegation is required in an information as in an indictment. Parris v. People, 76 Ill. 274;

Gould v. People, 89 Ill. 216. At common law an indictment must charge the offense to have been committed on a day certain, though it was not necessary to sustain the precise allegation by proof, provided the time stated was previous to the finding of the indictment (State v. Beaton, 79 Me. 314, 9 Atl. 728; State v. Withee, 87 Me. 462, 32 Atl. 1013; State G. S., 1 Tyler [Vt.] 295, 4 Am. Dec. 724; Roberts v. State, 19 Ala. 526; Braddy v. State, 102 Ga. 568, 27 S. E. 670); and the rule has not been changed in this State. At the trial the date averred means any time within the statute of limitations, but in determining the sufficiency of the indictment the date alleged must be taken as the true one. Dreyer v. People, 176 Ill. 590, 52 N. E. 372. If the date stated is beyond the statute of limitations, the indictment is bad and will be quashed. Garrison v. People, 87 Ill. 96; Lamkin v. People, 94 Ill. 501. If the offense is laid on an uncertain or impossible day, or on a future day, the objection is fatal, even in arrest of judgment. 2 Hawks P. C. c. 25, Sec. 77; State v. Sexton, 10 N. E. 184; 14 Am. Dec. 584; State v. Litch, 33 Vt. 67; Markley v. State, 10 Mo. 291; Murphy v. State, 106 Ind. 96, 5 N. E. 767, 55 Am. Rep. 722; Terrell v. State, 165 Ind. 443, 75 N. E. 884, 2 L. R. A. (N. S.) 251, 112 Am. St. Rep. 244, 6 Ann. Cas. 851.

"After the writ of error was sued out of the Appellate Court the people, upon notice to the plaintiff in error, applied to the Municipal Court and obtained an order amending the record so as to show that the leave to file the information was given on August 3, 1909, instead of on July 3, 1909. No amendment of the information itself was made, and no leave was asked for that purpose. Section 27 of the Municipal Court Act (Hurd's Rev. St. 1911, c. 37, Sec. 290) requires an information presented by a person other than the State's attorney to be verified by such other

person's affidavit. This information showed on its face that it was presented by a person other than the State's attorney, and was verified by such person's affidavit on July 3, 1909; but it charged no offense, because it stated that the defendant committed the acts with which he was charged on July 18, 1909. It was impossible the verification could apply to future acts. The date on which the court authorized the filing of the information is of no consequence, for the information itself had no validity. The date to the jurat may have been a clerical error; but it was fatal and the carelessness of the prosecutor cannot be disregarded or corrected by the guess of the court."

In the case of Straughter v. State, 83 Fla. 683, 92 Sou. 569, it was held:

· "At common law it is necessary that an indictment allege a definite date upon which the alleged crime was committed.

"There is no statute in this State expressly changing the rule at common law requiring an indictment to state a definite date upon which the alleged crime was committed.

"Except in those cases where the allegation and proof of the precise time are material, a different date from that alleged in an indictment before the return of the indictment and within the statute of limitations may be proved at the trial as the date upon which the alleged crime was committed.

"An indictment charging an offense to have been committed upon an impossible date is defective.

· "There is no such date in the calendar as September 31, and an indictment charging an offense to have been committed on such date is defective and a motion in arrest of judgment upon a conviction on such indictment seasonably made should be granted."

It will be noted that in that case the Court held that the defect of alleging an impossible date was properly taken

advantage of by motion in arrest of judgment. See also Elmo v. State, 126 Tex. Crim. 519, 73 S. W. (2) 107, and Eshom v. State, 120 Tex. Crim. 136, 48 S. W. (2) 631.

In Hunter v. State, 85 Fla. 91, 95 Sou. 115, it was held:

"The established general rule is that except in those cases where the allegation of the precise time is material a different date from that alleged in the indictment *before the date of the return of the* indictment and within the statute of limitations may be proven at the trial as the date upon which the crime was committed." (Emphasis supplied.)

The information in this case was insufficient to withstand the motion to quash, the motion for directed verdict or the motion in arrest of judgment.

Aside from matters discussed, we may say that the evidence was wholly insufficient to connect the plaintiff in error, Morton, with the alleged offense and there are errors apparent on the record in admitting certain prejudicial evidence against Wilson, but having reached the conclusion hereinbefore stated, it is not necessary for us to go further into those questions.

For the reasons stated, the judgment is reversed.

So ordered.

ELLIS, C. J., and TERRELL, J., concur.

WHITFIELD, P. J., and CHAPMAN, J., concur in the opinion and judgment.

BROWN, J., dissents in part.

BROWN, J. (dissenting in part).—I do not think that the court below erred in sustaining the demurrer to the plea in abatement. It does not set out *what* the defendant told the County Solicitor; nor whether he admitted guilt, or told the County Solicitor anything about the alleged crime, or gave any testimony concerning his co-defendant. Pleas in

abatement must be clear and certain as to every material fact. They must leave nothing to be supplied by intendment.