83 So.2d 105 (1955)
William J. ARNOLD and Harold Domanski, also known as Harold J. Dumaski, Appellants,
v.
STATE of Florida, Appellee.
Augustus W. ARMSTRONG, also known as Gus Armstrong, Appellant,
v.
STATE of Florida, Appellee.
Supreme Court of Florida, Special Division B.
July 15, 1955.
Rehearing Denied November 21, 1955.
L.J. Cushman, Zarowy, St. Jean & Shepard, Miami, for appellants.
Richard W. Ervin, Atty. Gen., and Bart L. Cohen, Asst. Atty. Gen., for appellee.
THORNAL, Justice.
The appellants, William J. Arnold and Harold J. Domanski, were charged with the offense of assault with intent to commit *106 armed robbery, and in a separate information the appellant, Augustus W. Armstrong, was charged with the offense of being an accessory before the fact to the crime of assault with intent to commit armed robbery. Arnold and Domanski were jointly charged in the same information. Both cases were tried simultaneously before the Judge of the Criminal Court of Record of Dade County, a jury having been waived. We will therefore dispose of both cases with this opinion. The trial resulted in the conviction of the three appellants respectively for the offenses charged in the informations and they were thereupon each sentenced to imprisonment at hard labor in the State Penitentiary for five years.
From the judgments and sentences they now appeal, asserting as grounds for reversal that there was a fatal defect in both informations and further that under the facts Arnold and Domanski could not have been guilty of assault with intent to commit armed robbery, and Armstrong could not have been guilty of being an accessory before the fact to such crime.
The testimony shows that about the middle of April, 1953, the appellant, Armstrong, being then a member of the Miami Beach Police Force, approached one Woodford D. Williamson, the night desk clerk at the Atlantic Towers Hotel, with a scheme to stage a fake robbery. Armstrong suggested that at a selected time he would arrange to have some confederates hold up Williamson who, with keys furnished by Armstrong, would previously have unlocked the hotel safety deposit boxes, where the hotel's "bank" and the money and other valuables of the guests were held for safekeeping. The details included a plan to make it appear that Williamson had nothing to do with the arrangement. The bandits would enter the hotel, bind Williamson and possibly tap him lightly on the head, bind the regular bellboy on duty, and then enter the safety deposit boxes and remove the valuables, including the hotel "bank" which was the cash each clerk on duty had available for making change and otherwise operating the business at the desk during his tour of duty.
Williamson reported the suggested plot to the Miami Beach Police who directed him to go along with the idea and continue making plans with the conspirators so that they could be caught in the act. Williamson followed the orders of the Police, and at the arranged time, about 3:30 A.M., April 18, 1953, the appellants, Arnold and Domanski, entered the hotel lobby armed with guns and carrying a satchel of some sort. They tied up the clerk, Williamson, with his consent, and also tied up the bellboy and hit him lightly on the head. The bellboy had no prior knowledge of the scheme. In addition, they proceeded to tie up a guest who unexpectedly happened to be in the lobby. The bandits had expected to find the bellboy but they had not anticipated the presence of the guest. They, therefore, did not come equipped with sufficient rope or wire to bind the latter. One of them undertook to rip an electric wire from the wall to be used to bind the guest and for some reason this resulted in a mild explosion and a flashing of light bulbs or electricity evidently produced by a short or break in the electrical wiring system. This created in the minds of the policemen who had been secreted all around the place the impression that a gun had been fired. At this point the bandits had not yet entered the safe or removed any of the property of the hotel or of its guests. When the explosion, resulting from the severed electric line, occurred, the police officers dashed upon the scene and proceeded to arrest Arnold and Domanski. Neither of the bandits did any shooting but each had a gun, and at least one of the guns was loaded. Domanski attempted to escape, and the police fired their guns wounding Domanski in the shoulder. He did not return the fire. He recovered from the wound.
The result of all this was that because of the premature appearance of the police occasioned by the flashing electricity, brought about by the disconnected electric line, the bandits were prevented from following through with their plan to rob the hotel safe. Armstrong was not on the scene of the crime. His part in the plot consisted of *107 the planning and the arranging for his confederates to do the robbing. He had planned for everything but the uninvited guest.
It is further shown that the clerk had about $200 in the hotel's "bank" at the time and that the various safety deposit boxes of the guests had been unlocked according to plan, and that these boxes contained various unspecified amounts of money as well as jewelry and other valuables.
The cases came on for trial in October of 1953. The defendants moved to quash the informations on the ground that after stating the court and style of the cases, the introductory part of each information contained the following:
"Robt. R. Taylor, County Solicitor for the County of Dade, prosecuting for the State of Florida in the said County, under oath, information makes * * *."
and that the jurat on each information contained the following:
"Personally appeared before me, Robt. R. Taylor, County Solicitor for Dade County, Florida, who, being first duly sworn, * * *."
The informations were signed by "John D. Marsh, County Solicitor, Dade County, Florida", and the oath was made and signed by "John D. Marsh, County Solicitor, Dade County, Florida", before a deputy clerk of the Criminal Court of Record, Dade County, Florida. At that time Mr. Marsh was the County Solicitor. The motion was denied.
The contended weakness in the informations is the fact that Mr. Taylor had ceased to be County Solicitor of Dade County. However, in January, 1953, Mr. Marsh had actually become the County Solicitor. While we cannot condone the practice of permitting such clerical misprisions, nevertheless we do not consider that the defect is of such nature that it in any way embarrassed the appellants in their defense against the charges alleged. In fact, appellants Armstrong and Domanski never even took the witness stand to deny the charges against them and the effort of Arnold was so feeble that it amounted almost to an absurdity. It is true that the information is the basis for a criminal prosecution and the law requires that the information be under the oath of the Prosecuting Attorney. Actually, in the instant case the information was under the oath of the Prosecuting Attorney, to wit, the County Solicitor.
The defect here involved was not similar to the defect in the information in Wilson v. State, 134 Fla. 390, 184 So. 31, where the jurat was dated a year before the date alleged in the body of the information as having been the date on which the crime was committed. The defect in the case at bar is more nearly one of form than of substance. It was not a defect in the charge itself. We hold that in this particular instance Section 906.25, Florida Statutes, F.S.A., is controlling. This section reads as follows:
"No indictment or information shall be quashed or judgment arrested or new trial be granted on account of any defect in the form of the indictment or information, or of misjoinder of offenses or for any cause whatsoever, unless the court shall be of the opinion that the indictment or information is so vague, indistinct and indefinite as to mislead the accused and embarrass him in the preparation of his defense or expose him after conviction or acquittal to substantial danger of a new prosecution for the same offense."
The information in the instant case was not so vague, indistinct and indefinite as to mislead the accused in the preparation of their defenses, or to expose them to substantial danger of a new prosecution for the same offenses. The trial Judge correctly denied the motion to quash.
The appellants further contend that under no circumstances could there have been an intent to commit the crime of armed robbery as defined by statute for the reason that the offense actually committed *108 was undertaken pursuant to a preconceived plan and that Arnold and Domanski had no intent whatever to kill or maim, if resisted, in the prosecution of the crime, this being one of the essentials of armed robbery. The record sustains this contention. They assert that this was only a sort of "make-believe" robbery, that it was being staged with the victim's consent, and that absent the specific intent to kill or maim, if resisted, the principals could not be convicted of assault with intent to commit armed robbery, and the accessory therefore could not have been an accessory before the fact to an offense which the principals did not and could not have committed.
The State concedes that an essential element of armed robbery is lacking as contended by the appellants. However, it is insisted that despite the "dramatis personae" this offense was not just a game of "cops and robbers" being staged by a group of prankish boys. On the contrary, the State points out that the appellants were guilty of a very serious offense, in some degree less vicious than the offense charged but nonetheless serious, and that this Court should dispose of the case in accordance with the provisions of Section 924.34, Florida Statutes, F.S.A., which reads as follows:
"In a case where the offense is divided into degrees or necessarily includes lesser offenses, and the appellate court is of the opinion that the evidence does not prove the degree or offense of which the defendant is found guilty, but does establish his guilt of some lesser degree or offense necessarily included therein, then the appellate court shall reverse the judgment of the trial court with directions to the trial court to enter judgment for such lesser degree or offense necessarily included in the charge and pass sentence accordingly, unless some other matter or thing appearing in the record makes it advisable that a new trial be had."
It is claimed that the appellants Arnold and Domanski were guilty of the offense of assault with intent to commit grand larceny which is an offense necessarily included in the charge of assault with intent to commit armed robbery, and that Armstrong was guilty of being an accessory before the fact to the commission of the lesser offense. Appellants, Arnold and Domanski, claim that the most they could be guilty of is the crime of conspiracy as defined by Section 833.01, Florida Statutes, F.S.A., and the appellant, Armstrong, contends for the same proposition. None of the appellants seriously claims that he was completely innocent of all crime under the circumstances.
An analysis of Section 924.34, Florida Statutes, F.S.A., supra, will reveal that in order for it to be applicable, the offense charged must be one divisible into degrees or it must be one which necessarily includes a lesser offense for which a defendant in a particular case might be found guilty.
There can be no doubt that the crime of robbery necessarily includes the crime of larceny, the difference primarily being that robbery is an aggravated form of larceny involving force and violence. In Williams v. Mayo, 126 Fla. 871, 172 So. 86, 88, this Court stated, "`While distinct therefrom, every robbery includes a larceny, and may include an assault or assault and battery.'"
Although appellants assert that the record does not sustain the conclusion that grand larceny could have been committed, we cannot agree with their contention. The record is permeated with testimony that the hotel safety boxes contained money and other valuables of the guests, and it is clear that the hotel clerk had placed in the safe his hotel "bank" which amounted to at least $200. There was abounding circumstantial evidence in addition to the direct evidence from which the able trial Judge could easily conclude that so far as value of the property to be taken was concerned it greatly exceeded the statutory requirement of fifty dollars in order to constitute grand larceny. See Rebjebian v. State, Fla., 44 So.2d 81.
We, therefore, find that the appellants, Arnold and Domanski, were guilty of the offense of assault with intent to commit grand larceny, and that the appellant, Armstrong, *109 was guilty of the offense of being an accessory before the fact to the crime of assault with intent to commit grand larceny. The crime of robbery necessarily includes larceny as a lesser offense. The value of the property involved here makes it grand larceny.
The judgment of the trial Court is, therefore, reversed, with directions to enter a judgment of conviction against the three appellants for the lesser offenses of which they were respectively guilty, and to pass sentence upon them accordingly.
Reversed with directions.
TERRELL, Acting Chief Justice, and THOMAS and SEBRING, JJ., concur.