365 S.E.2d 803

**STATE of West Virginia**

v.

**Rodney K. PENNINGTON.**

No. 17437.

Supreme Court of Appeals of West Virginia.

Dec. 18, 1987.

Rehearing Denied Feb. 3, 1988.

Charlie Brown, Atty. Gen., for the state.

Dan L. Hardway, Charleston, for Pennington.

McHUGH, Justice:

This case is before this Court upon the appeal of Rodney Pennington from his conviction by a jury of first degree murder pursuant to *W.Va.Code*, 61–2–1 [1987]. It arises from an order of the Circuit Court of Mercer County which denied the appellant's motion for a new trial and sentenced him to life imprisonment with mercy.[1] This

---

**1.** Because of the tremendous amount of pretrial publicity generated by this case, venue was

Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel.

■ The principal assignments of error are as follows: (1) that the appellant is entitled to a new trial or acquittal due to the State's extraordinary dereliction of duty in producing a transcript of his trial; (2) that the principal prosecution witness' testimony was obtained illegally under an improper grant of immunity by the prosecutor, thereby invalidating the witness' testimony and depriving the appellant of due process of law; (3) that the trial court erred in denying the appellant's motion to disqualify the Fayette County Prosecutor from prosecuting the case and in denying the appellant's motion to set aside the verdict based on prosecutorial overreaching and abuse during the course of the trial; (4) that the trial court erred in granting the

appellant's second trial (*see* note 1 *supra*) on the grounds that the second trial violated the appellant's right not to be placed twice in jeopardy for the same offense.[2]

## I

On April 8, 1981, the victim, Amma Matthews, was found shot to death in the kitchen of her home in Oak Hill, Fayette County. Police summoned to the crime scene could find no evidence of forced entry. The medical reports revealed that Mrs. Matthews had been shot twice: the fatal wound resulted from a bullet to the back of her head.

As the murder investigation continued, the police theorized that the murder weapon might have been one of several guns stolen in a seemingly unrelated burglary approximately a week before the murder.[3]

changed from Fayette County to Mercer County. The appellant's first trial ended in a mistrial upon the appellant's motion after certain prejudicial comments were made by the prosecuting attorney in the jury's presence. The appellant was tried again in Mercer County. The order from which the appellant brings this appeal arises from the second trial. This opinion discusses evidence from the appellant's second trial.

2. The appellant's counsel filed an exhaustive, excellent brief on behalf of his client. However, the balance of the appellant's assignments of error are without merit and do not warrant further discussion: that the trial court erred in admitting into evidence a power of attorney and revocation of a power of attorney executed by the appellant's grandfather; the power of attorney and revocation of the power of attorney were recorded and properly authenticated pursuant to *W.Va.R.Evid.* 901(b)(7); that the trial court erred in allowing the State to call a surprise rebuttal witness over the appellant's objection, *see* syl. pt. 2, *State v. Grimm,* 165 W.Va. 547, 270 S.E.2d 173 (1980) (nondisclosure is prejudicial when the defense is surprised on a material issue and that failure to disclose hampers the preparation and presentation of the defendant's case; appellant failed to prove either prong of this test); *see State v. Ward,* 168 W.Va. 385, 389, 284 S.E.2d 881, 884 (1981); that the trial court erred in allowing the State to introduce improper rebuttal testimony over the appellant's objection, syl. pt. 8, *State v. Pietranton,* 140 W.Va. 444, 84 S.E.2d 774 (1954) (whether State may introduce further evidence after defense has rested its case is matter within sound discretion of the trial court); that the appellant was denied a fair trial and his right to assistance of counsel by the ineffectiveness of

his trial counsel, *see State v. Glover,* 177 W.Va. 650, 653–654, 355 S.E.2d 631, 634–35 (1987) (one who charges on appeal that his trial counsel was ineffective and that such resulted in his conviction must prove the allegation by a preponderance of the evidence); that the trial court improperly limited *voir dire* of the jury thereby prejudicing the appellant by denying him all the information he needed in selecting a fair and impartial jury, *see* syl. pt. 2, *State v. Mayle,* 178 W.Va. 26, 357 S.E.2d 219 (1987) (in criminal case, inquiry made of a jury on its *voir dire* is within the sound discretion of the trial court and not subject to review, except when the discretion is clearly abused); that the trial court erred in denying the appellant's motion to strike certain jurors for cause, *see State v. Moran,* 168 W.Va. 688, 688 n. 1, 285 S.E.2d 450, 452 n. 1 (1981) (because appellant's brief fails to argue an assignment of error set forth in the petition, the assignment of error is waived); that the verdict is not supported by the weight of the evidence, *see* syl. pt. 1, *State v. Starkey,* 161 W.Va. 517, 244 S.E.2d 219 (1978) (court must be convinced that evidence was manifestly inadequate and that consequent injustice has been done); and that the cumulative effect of all the above assignments of error warrant reversal of the appellant's conviction by this Court, *see* syl. pt. 5, *State v. Smith,* 156 W.Va. 385, 193 S.E.2d 550 (1972) (cumulative effect of assigned errors must be such as to deprive the defendant of a fair trial).

3. Evidence adduced at trial demonstrated that Robert Michael Honaker and an accomplice burglarized the home of Bobby Conner and stole five guns, including the murder weapon. Testimony at trial revealed that after stealing

The investigation into the burglary culminated in the arrest of Robert Michael Honaker, a friend of the appellant's.

While in jail on the burglary charge, Honaker confessed to stealing the guns and to the murder of Amma Matthews. He then revealed that the appellant had repeatedly asked him to kill Mrs. Matthews for $1,000 so that Mrs. Matthews could not interfere with the appellant's inheritance from his grandfather's estate. In exchange for this incriminating testimony against the appellant at trial, the Fayette County Prosecuting Attorney promised immunity to Honaker for the first degree murder charge. No order approved by a court was entered granting immunity.

At trial, Honaker described in detail the events that had transpired on the night of Amma Matthews' murder. The witness described how the appellant drove him to the appellant's home to obtain the loaded gun from the appellant's wife. Honaker stated that the pair then drove to the victim's house, where the appellant advised Honaker as to what to say in order to assure that the victim would allow him to enter her home. Honaker testified that the appellant waited in his car while he went to the victim's kitchen door and committed the murder. Subsequently, the witness said that he and the appellant drove around, disposed of the murder weapon and then proceeded to meet some friends at a nightclub.

The appellant's description of the events on the night of the murder was consistent with Honaker's testimony except that the appellant denied that he had asked Honaker to murder the victim and denied knowing that Honaker had intended to commit the murder that evening. The appellant testified that he and Honaker were in the neighborhood so that Honaker could borrow money from his brother-in-law, a neighbor of Mrs. Matthews. The appellant admitted that he had heard the gunshots, but noted that when Honaker returned to his car and stated that he had murdered Mrs. Matthews, he was confused about what to do and was not sure if he should believe him. Nevertheless, the appellant failed to notify the authorities of what had occurred.

At the conclusion of the trial, the jury returned a verdict of guilty of first degree murder with a recommendation of mercy.

## II

## EXTRAORDINARY DERELICTION IN PRODUCTION OF TRANSCRIPT

The first issue before us in this case is whether the State was extraordinarily derelict in producing the appellant's trial transcript, thereby entitling the appellant to acquittal of his first degree murder charge, or, in the alternative, a new trial.

The appellant contends that he has been denied his right to an appeal and due process of law because the trial transcript of his second trial was not completed until approximately two years after the completion of his trial. He contends that this delay in the production of his trial transcript is tantamount to a complete denial of the transcript.

The State, on the other hand, maintains that the appellant has failed to provide the necessary record to determine the appellant's allegations of extraordinary dereliction. The State further asserts that this claim would be more appropriately raised in a habeas corpus proceeding.

---

the guns, Honaker sold them to the appellant for $250. The appellant contends that the trial court erred by allowing the admission of what has been termed "collateral crime evidence."

The appellant's contention in this regard is without merit. Ordinarily, evidence of the commission of other acts of misconduct is inadmissible when it is introduced to prove that a party acted consistent with prior behavior. F. Cleckley, *Handbook on Evidence for West Virginia Lawyers*, § 6.3(A), at 342 (2d ed. 1986). However, in the case before us, the evidence was utilized as an evidentiary device by the State to demonstrate the origin of the murder weapon and to ultimately trace the weapon to the appellant. *See* syl. pt. 1, *State v. Bratcher*, 157 W.Va. 918, 206 S.E.2d 408 (1974) (evidence offered pertaining to separate and distinct offenses alleged to have been committed by the defendant must show involvement by the defendant in order to be admissible). Thus, the trial court did not abuse its discretion in allowing the admission of the evidence. *See* syl. pt. 10, *State v. Huffman*, 141 W.Va. 55, 87 S.E.2d 541 (1955).

■ It is fundamental that due process requires the State to afford a defendant a trial transcript upon timely request. *See, e.g., State ex rel. Johnson v. McKenzie,* 159 W.Va. 795, 800, 226 S.E.2d 721, 724 (1976). The standard which this Court has adopted to determine if a defendant has been denied due process with respect to his right regarding appeal is whether there has been "extraordinary dereliction" on the part of the State in production of the trial transcript as determined by the particular facts of the individual case. *State v. Pettigrew,* 168 W.Va. 299, 303, 284 S.E.2d 370, 373 (1981); *Rhodes v. Leverette,* 160 W.Va. 781, 793, 239 S.E.2d 136, 144 (1977). In syllabus point 6 of *Rhodes,* we elaborated on what may constitute "extraordinary dereliction":

> Factors to be considered in determining whether there has been extraordinary dereliction are: the clarity and diligence with which the relator has moved to assert his right of appeal; the length of time that has been served on the underlying sentence measured against the time remaining to be served; whether prior writs have been filed or granted involving the right of appeal; and the related question of whether resentencing has occurred in order to extend the appeal period. While extraordinary dereliction on the part of the State does not require a showing of malice or ill will, certainly if such is shown it would be a significant factor.

*Accord,* syl. pt. 3, *State v. Pettigrew,* 168 W.Va. 299, 284 S.E.2d 370 (1981).

■ In applying the above factors to the facts in the case now before us, we conclude that the State has not been so extraordinarily derelict as to justify the setting aside of the appellant's conviction. Although it is apparent from the record that the appellant clearly asserted his right of appeal at the outset, and further pursued his claim by filing a writ of habeas corpus with this Court, a consideration of the remaining factors in *Rhodes* mitigates

against the granting of the requested relief. The appellant has served minimal time on his life sentence.[4] This can be contrasted sharply to the circumstances found in *Johnson v. McKenzie,* 160 W.Va. 385, 386–87, 235 S.E.2d 138, 139 (1977), in which the Court granted an unconditional discharge of a prisoner who had served just three months short of his minimum sentence. *See also State v. Pettigrew,* 168 W.Va. at 304, 284 S.E.2d at 374. We are aware that the appellant has been resentenced in order to extend his time for appeal, but under the facts of this case, are of the opinion that the State's action does not constitute extraordinary dereliction.

The delay in the completion of the trial transcript was the result of a number of circumstances peculiar to the case before us, namely the change of venue in the case and the voluminous size of the transcript itself, none of which circumstances evidenced any malice or ill will on the part of the State. Although a defendant should not be made to suffer from the exercise of his right to seek a change of venue, some problems of delay were attributable to practical problems of court administration resulting from the change of venue. *See State ex rel. Mastrian v. Tahash,* 277 Minn. 309, 311, 152 N.W.2d 786, 788 (1967). Certainly another problem was the sheer volume of the transcripts from both of the appellant's trials, which undoubtedly required a considerable amount of time for transcription.

In light of the above and again noting the absence of any evidence of malice or ill will on the part of the State resulting in the delay in producing the transcript, we cannot say that the appellant has been deprived of any due process rights. In *State v. Pettigrew,* 168 W.Va. at 305, 284 S.E.2d at 374, we quoted approvingly the Minnesota Supreme Court's language in *State ex rel. Mastrian v. Tahash,* 277 Minn. 309, 312–13, 152 N.W.2d 786, 789 (1967), a habeas corpus proceeding, in which there had

---

**4.** The appellant's current status is unclear from the record. In the transcript of the appellant's post-conviction bail hearing, reference is made to the fact that the appellant had been placed under what has been termed "house arrest." At the conclusion of that hearing, the trial judge reaffirmed that previous ruling placing the appellant on "house arrest."

been a three-year delay in furnishing a transcript:

> Although, as we have said, the delay encountered by relator was unfortunate, we cannot say that it was unreasonable or oppressive in a constitutional sense. Whether or not his rights were grounded on either the Sixth or Fourteenth Amendment, those rights are necessarily relative and are consistent with delays that are neither purposeful nor oppressive. Moreover, even if we were to say that relator's constitutional rights were infringed by this delay, the remedy is in correction of the error and not in the reversal of his conviction or his discharge from confinement. What relator rightly seeks is adequate and effective appellate review upon the merits of his original conviction and that he will now have.

(citations omitted)

## III
## GRANT OF IMMUNITY

The next issue presented by this appeal is whether the testimony of witness Honak-

er was obtained by an unauthorized grant of immunity by the prosecutor, thereby invalidating the witness' testimony and depriving the appellant of due process of law.

The immunity statute, *W. Va. Code*, 57–5–2 [1931][5] authorizes only a court to grant immunity to a person when " 'the ends of justice may be promoted by compelling such testimony or evidence.' " *Myers v. Frazier*, 173 W.Va. 658, 677, 319 S.E.2d 782, 802 (1984). Generally, when a prosecutor without court approval initially agrees not to prosecute if the suspect will cooperate in the prosecution of other suspects, "[m]ost courts have held that in the absence of some express constitutional or statutory provision, a prosecutor has no inherent authority to grant immunity against prosecution." Syl. pt. 16, *Myers v. Frazier, supra*, collecting cases at 802; *see generally* annotation, *Prosecutor's Power to Grant Prosecution Witness Immunity from Prosecution*, 4 A.L.R. 4th 1221, § 3 (1981).[6]

---

5. *W.Va.Code*, 57–5–2 [1931] provides:

   In any criminal proceeding no person shall be excused from testifying or from producing documentary or other evidence upon the ground that such testimony or evidence may [in]criminate or tend to [in]criminate him, if the court in which he is examined is of the opinion that the ends of justice may be promoted by compelling such testimony or evidence. And if, but for this section, the person would have been excused from so testifying or from producing such evidence, then if the person is so compelled to testify or produce other evidence and if such testimony or evidence is self-[in]criminating, such self-[in]criminating testimony or evidence shall not be used or receivable in evidence against him in any proceeding against him thereafter taking place other than a prosecution for perjury in the giving of such evidence, and the person so compelled to testify or furnish evidence shall not be prosecuted for the offense in regard to which he is so compelled to testify or furnish evidence, and he shall have complete legal immunity in regard thereto.

6. A few courts have recognized that where a prosecutor has promised immunity to a witness without having the inherent authority to do so, subsequent prosecution of the witness is not foreclosed, but the evidence induced or secured against the witness cannot be used against him. *See, e.g., People v. Manning*, 672 P.2d 499, 512–13 (Colo.1983); *State v. Ward*, 571 P.2d 1343, 1347 (Utah 1977), *cert. denied*, 435 U.S. 1005, 98

S.Ct. 1874, 56 L.Ed.2d 386 (1978); *see also Myers v. Frazier, supra* 173 W.Va. at 678 n. 37, 319 S.E.2d at 803 n. 37. However, the cases cited for this proposition are distinguishable from the case now before us because the evidence secured from the witness, Honaker, would not offend principles of self-incrimination since it is being used against the appellant rather than the witness himself.

Conversely, some courts have applied a concept of "equitable immunity" to the above situation and enforced immunity agreements granted by the prosecutor, despite the fact that the witness' rights could be protected by excluding any induced testimony or derivative evidence. *Rowe v. Griffin*, 676 F.2d 524, 526 (11th Cir. 1982); *People v. Brunner*, 32 Cal.App.3d 908, 915, 108 Cal.Rptr. 501, 506 (1973). *See also Myers, supra.* We note that the concept of "equitable immunity" is not well-defined. *Rowe v. Griffin*, 676 F.2d 524, 526 n. 3 (11th Cir.1982); *United States v. Weiss*, 599 F.2d 730, 735 n. 9 (5th Cir.1979). Our research reveals the phrase is used in several cases, but without precise definition. *See, e.g., Rowe, supra; Weiss, supra; United States v. Donahey*, 529 F.2d 831, 832 (5th Cir.), *cert. denied*, 429 U.S. 828, 97 S.Ct. 85, 50 L.Ed.2d 91 (1976).

Several courts have determined that a prosecuting attorney, acting without or apparently without, the knowledge and approval of the court having jurisdiction of the issue, could nevertheless validly extend immunity to a pro-

In this regard, the American Bar Association's *Standards for Criminal Justice* instruct us, in pertinent part:

> (b) ... The prosecutor may in some circumstances and for good cause consistent with the public interest decline to prosecute, notwithstanding that sufficient evidence may exist which would support a conviction. Illustrative of the factors which the prosecutor may properly consider in exercising his or her discretion are:
>
> ....
>
> (vi) cooperation of the accused in the apprehension or conviction of others; ...

*Standards for Criminal Justice* § 3-3.9(b)(vi) (2d ed. 1986). Thus, under those standards, an agreement not to prosecute an accomplice who is cooperating in the conviction of others is not an abuse of prosecutorial discretion. *See United States v. Librach, supra* at 1230.

■ Our decision to refuse to allow the appellant to attack the grant of immunity in this case is based upon the fact that the provisions of *W.Va.Code,* 57-5-2 [1931], seek to protect only the witness called on the prosecution's behalf. In *State v. Abdella,* 139 W.Va. 428, 442, 82 S.E.2d 913, 921 (1954), this Court specifically noted that "[n]o one is protected under this section except the witness who is called on behalf of the state to testify...." In the case before us, the appellant, rather than the witness himself, attempts to have those statutory protections afforded him. We decline to interpret the protective provisions of *W.Va.Code,* 57-5-2 [1931] so broadly. Accordingly, we hold that a prosecution witness who has purportedly been afforded immunity from prosecution pursuant to *W.Va.Code,* 57-5-2 [1931], and who testifies against a defendant in a criminal proceeding is the only person who may assert the protection of that statute in regard to that grant of immunity. The defendant, however, in that criminal proceeding may not assert irregularities in regard to the granting of that immunity from prosecution.

## IV
## DISQUALIFICATION OF PROSECUTOR

Another issue before us in this case is whether the trial court erred in denying the appellant's motion to disqualify the prosecuting attorney from prosecuting this case and in denying the appellant's motion to set aside the verdict based upon allegations of prosecutorial overreach. The appellant contends that the Fayette County prosecutor should have been disqualified primarily because of improper pretrial statements made by the prosecutor.[7] He further asserts that publicity generated during and after the appellant's first trial are indicative of prosecutorial overreach.[8]

---

spective prosecution witness. Annotation, *Prosecutor's Power to Grant Prosecution Witness Immunity From Prosecution,* 4 A.L.R.4th 1221 § 5[c] (1981); *see, e.g., Hammers v. State,* 263 Ark. 378, 565 S.W.2d 406 (1978); *Wilson v. State,* 134 Fla. 390, 184 So. 31 (1938). *See also United States v. Librach,* 536 F.2d 1228 (8th Cir.), *cert. denied,* 429 U.S.939, 97 S.Ct. 354, 50 L.Ed.2d 308 (1976) (failure to seek statutory-required court approval of an immunity agreement does not render the agreement unlawful).

7. In essence, the appellant maintains that the prosecutor's improper pretrial statements exceeded the outer limits of the prescribed conduct with respect to trial publicity and the investigation of criminal matters found in the West Virginia *Code of Professional Responsibility.* The pertinent provisions of the applicable rule in this case read:

> (A) A lawyer participating in or associated with the investigation of a criminal matter shall not make or participate in making an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication and that does more than state without elaboration:
> (1) Information contained in a public record.
> (2) That the investigation is in progress.
> (3) The general scope of the investigation including a description of the offense and, if permitted by law, the identity of the victim.
> (4) A request for assistance in apprehending a suspect or assistance in other matters and the information necessary thereto.
> (5) A warning to the public of any dangers.

West Virginia *Code of Professional Responsibility* DR 7-107(A) (1983).

8. The appellant essentially contends that the prosecutor had a "personal interest" in prosecuting this case, specifically, that the appellant's conviction could help secure a victory for the prosecutor in his bid for election to his office.

Additional background facts surrounding this case are noteworthy. Three days after the vic-

■ This Court has recognized that there is general authority for the proposition that where a prosecutor has a personal interest, as distinguished from a public interest, in convicting an accused, he or she may be disqualified. *See Martin v. Leverette*, 161 W.Va. 547, 556, 244 S.E.2d 39, 44 (1978). In syllabus point 4 of *State v. Knight*, 168 W.Va. 615, 285 S.E.2d 401 (1981), this Court enunciated the standard to be applied in determining whether a prosecuting attorney should be disqualified from prosecuting a particular case: "Under circumstances where it can reasonably be inferred that the prosecuting attorney has an interest in the outcome of a criminal prosecution beyond ordinary dedication to his duty to see that justice is done, the prosecuting attorney should be disqualified from prosecuting the case...." In light of the foregoing, it is essential to determine whether the prosecutor's interest in prosecuting a particular case goes "beyond [an] ordinary dedication to his [or her] duty to see that justice is done." The focus becomes whether the prosecutor's interest is public or personal.

*State v. Knight, supra* is illustrative of the type of situation that constitutes a "personal interest" resulting in disqualification of the prosecutor. In that case, the defendant had been convicted of indecent exposure. Prior to trial, defense counsel filed a motion to recuse the prosecuting attorney because of his previous association with the defendant. Specifically, the defendant had been convicted "of stealing materials from the prosecutor's houseboat

and had been placed on probation upon the condition that he make full restitution to the prosecutor." 168 W.Va. at 617, 285 S.E.2d at 403. At the time his case had come to trial, the defendant had not made restitution. The Court further noted that the only witness for the State was the personal secretary of the prosecuting attorney.[9] In holding that the prosecuting attorney should have recused himself, the Court observed that the prosecutor's former association with the appellant and his relationship with the only state witness in that case combined to make the case appear to serve as a vendetta of sorts. *Id.*, 168 W.Va. at 623, 285 S.E.2d at 406. In the discussion in *Knight*, the Court recognized that it is only under very rare circumstances that a special prosecutor should be appointed. *Id. See, e.g., State ex rel. Preissler v. Dostert*, 163 W.Va. 719, 260 S.E.2d 279 (1979).

In the case before us, the media gave extensive coverage to the investigation of this case, the subsequent arrest of the appellant, and his trial. The record on this appeal has been augmented to include transcripts of radio and television broadcasts as well as newspaper accounts reporting the appellant's case. Moreover, the prosecutor, as we discussed in note 8 *supra*, realized that the manner in which he handled this case would likely have a bearing on his future as a prosecutor because of the approaching primary election in June, 1982. This is apparent by the newspaper campaign engaged in by the prosecutor's opponent for the Democratic nomination for

tim's body was discovered in 1981, the assistant prosecutor assigned to handle this case became the prosecuting attorney of Fayette County due to the unexpected death of the incumbent prosecuting attorney. The appellant argues that the prosecutor was cognizant of the fact that he would seek election to the office in the June, 1982 primary and that he intentionally generated extensive publicity in this case to gain support for his election bid.

9. For other cases holding that recusal by the prosecutor or disqualification of the prosecutor was warranted under the circumstances, *see Martin v. Leverette*, 161 W.Va. 547, 244 S.E.2d 39 (1978) (prosecutor held to have personal interest in outcome of prosecution where appellant had previously instituted a civil action

against the prosecutor); *State v. Britton*, 157 W.Va. 711, 203 S.E.2d 462 (1974) (prosecutor should have recused himself where by reasons of his professional relations with the accused he has acquired knowledge upon which the prosecution was predicated); *Chapman v. Summerfield*, No. 17911 (W.Va. Nov. 17, 1987) (per curiam order) (prosecutor should have recused himself when a staff member previously consulted with the defendant in the initial stages of the case the prosecutor sought to pursue); *Ganger v. Peyton*, 379 F.2d 709 (4th Cir.1967) (in habeas corpus proceeding, court found that the prosecuting attorney had a personal interest in the conviction of the defendant where he was simultaneously representing the defendant's wife in a divorce proceeding against the defendant).

prosecuting attorney, as well as the election activities of the prosecutor himself.

Approximately one month before the primary election, the prosecutor's opponent ran a political advertisement in area newspapers entitled "Questions to Ask Our Present Prosecutor." One of these questions focused on the issue of granting immunity to Honaker. The prosecutor, in turn, responded by way of his own political advertisement, explaining his actions, entitled "Answers to an Inexperienced Would–Be Prosecutor."

We must now address whether or not the prosecutor should have been disqualified because his actions regarding his campaign evidenced "personal interest" in the case beyond an ordinary dedication to his duty to see that justice is done.

A similar issue was faced by the Supreme Court of Vermont in *State v. Hohman,* 138 Vt. 502, 420 A.2d 852 (1980). In that case, after a remand of the defendant's case and before his retrial, the prosecutor, who was seeking reelection at the time, published a political advertisement in a local newspaper. In this advertisement, the prosecutor commented on the reversal of the defendant's second degree murder conviction, mentioned the defendant by name, and promised to obtain a second conviction of the defendant if he was reelected. The Supreme Court of Vermont determined that it was error for the prosecutor to fail to disqualify himself and error for the trial court to deny the defendant's motion for disqualification of the prosecutor. 138 Vt. at 505, 420 A.2d at 855.

A related issue was recently considered by the California Court of Appeals in *People v. Phillips,* 169 Cal.App.3d 632, 215 Cal.Rptr. 394 (1985). In *Phillips,* a deputy district attorney had participated in a pretrial radio talk show discussing the defendant's case, and the defendant subsequently sought recusal of the entire county district attorney's office. The Court of Appeals determined that the trial court's denial of the defense motion to recuse the

prosecutor was not an abuse of discretion primarily because during the talk show the deputy district attorney had cautiously avoided references to the merits of the defendant's case.

■ While the prosecutor's conduct in the case before us was ill-advised, the record demonstrates that he cautiously avoided discussing the merits of the appellant's case in these advertisements as well. Moreover, we note that the prosecutor never mentioned the appellant by name, never promised to obtain a jury conviction and emphasized that the final verdict rested with the jury. In addition, the focus of the advertisements was not on the prospective conviction of the appellant, but rather on why Honaker had been granted immunity. *Cf. State v. Hohman, supra.* Thus, in the case before us, the facts stop short of the egregious conduct exhibited by the prosecutor in *Hohman.*

Based upon the record before us in this case, we are of the opinion that it cannot "reasonably be inferred that the prosecuting attorney ha[d] an interest in the outcome of [this case] beyond ordinary dedication to his duty to see that justice is done[.]" *State v. Knight, supra.* However, we strongly condemn the conduct of both the prosecutor and his opponent. Certainly, such conduct erodes public respect for a fair system of justice. The power to prosecute must never be manipulated for political profit. *See State v. Hohman,* 138 Vt. at 505, 420 A.2d at 855.

An ancillary issue is whether the jury was contaminated by the information contained in the exchange of political advertisements. A most significant factor regarding prejudicial impact on the jury concerning this issue is that these political advertisements were run by *The Fayette Tribune* and the *Fayette Free Press,* Fayette County newspapers, while the case was being tried in Mercer County.[10] There is no evidence in the record that indicates that the advertisements resulted in any prejudice against the appellant. Absent

---

**10.** The trial judge, in denying the appellant's motion for recusal of the prosecutor, noted, "I'll bet there are not ten people in this whole county that read his political ads." Transcript of hearing on the appellant's motion for recusal of the prosecutor at p. 22.

from the record before us is any indication that the appellant was deprived of his right to a fair trial as a result of the prosecutor's conduct. *Cf. State v. Critzer*, 167 W.Va. 655, 280 S.E.2d 288 (1981); *State v. Boyd*, 160 W.Va. 234, 233 S.E.2d 710 (1977).

▮ Accordingly, we conclude that where a prosecutor, while involved in his election campaign, made pretrial statements regarding the status of a criminal case and also by newspaper advertisements responded to his opponent's newspaper advertisements which questioned acts of the prosecutor in the conduct of that case, absent evidence that the defendant was prejudiced by the prosecutor's conduct, that conduct alone may not necessarily disqualify the prosecutor in that case.[11]

## V

## DOUBLE JEOPARDY

A fourth issue to be discussed is whether the trial court erred in denying the appellant's motion to bar the appellant's second trial because the second trial allegedly violated the appellant's right not to be placed in jeopardy twice for the same offense.

The appellant's first trial ended in a mistrial.[12] Prior to the start of the second trial, appellant's counsel moved to bar further prosecution on the grounds that it would violate jeopardy principles. At a hearing on the motion, the trial court rejected the appellant's jeopardy claim. The second trial judge accepted the first trial judge's finding that there had been no intent on the part of the prosecutor to cause a mistrial. The second trial judge determined that the retrial of this defendant would not violate his constitutional right not to be placed twice in jeopardy.[13]

The appellant maintains that the trial court erred in denying his motion for two reasons: (1) that the judge at his first trial failed to allow the appellant to proceed with the trial and granted the mistrial *sua sponte* absent manifest necessity, and (2) that the mistrial was a result of prosecutorial overreach, thereby constituting grounds for assertion of a proper plea of jeopardy before the second trial.

---

**11.** The appellant also contends that the prosecutor's questions regarding whether the appellant was a beneficiary of his grandfather's will were indicative of prosecutorial overreach sufficient to constitute reversible error. However, this contention is without merit because objections regarding these questions were promptly made, the objections sustained, and the jury instructed to disregard the questions. During trial, the following dialogue transpired:

Q. Tell this jury how much he [Wiley Caldwell, appellant's grandfather] left you when he died?
MR. ALLEN: Objection.
THE COURT: Sustained.
THE WITNESS: I don't really know.
BY MR. BLAKE: Q. To your knowledge, Mr. Pennington, were you a beneficiary of the Last Will and Testament of Wiley Caldwell?
MR. CLINE: Objection.
THE COURT: Sustained. Don't pursue that any further, Mr. Blake. The jury will disregard that.
MR. BLAKE: I don't have anything further.
(Transcript of trial, Volume IX at 141–42). This Court has held that "[o]rdinarily where objections to questions or evidence by a party are sustained by the trial court during the trial and the jury [is] instructed not to consider such matter, it will not constitute reversible error." Syl. pt. 18, *State v. Hamric*, 151 W.Va. 1, 151 S.E.2d 252 (1966). *See also* syl. pt. 1, *State v.*

*Acord*, 175 W.Va. 611, 336 S.E.2d 741 (1985). In the case before us, the appellant did not respond to the prosecutor's questions, and the trial judge's instruction to the jury to disregard the questions was sufficient.

**12.** The following dialogue between the prosecutor and the appellant on cross-examination reveals the prosecutor's remarks which prompted the defense's motion for mistrial:

Q. (Prosecutor) And why didn't you tell Trooper Whisman and Officer Gill, at that point, exactly what happened?
A. (Appellant) I don't know. I just was upset and I didn't know what to do. I didn't want to get anymore involved than what I was. I just didn't know what to say or what to do. You just don't know what it's like to be put in that spot.
A. (Prosecutor) No, I have never set-up killing anyone.

**13.** The fifth amendment to the *United States Constitution* provides in pertinent part: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, ... nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; ..." Parallel language is found in article III, section 5 of the *West Virginia Constitution*.

In *State ex rel. Betts v. Scott,* 165 W.Va. 73, 267 S.E.2d 173 (1980), we had an opportunity to discuss whether jeopardy may be asserted on retrial where the first trial terminated in midtrial as the result of a defense motion for mistrial precipitated by prosecutorial overreaching. There, we noted that where a mistrial is declared *sua sponte* by the trial court, absent a showing of manifest necessity, the defendant is entitled to the bar of jeopardy on retrial. 165 W.Va. at 83, 267 S.E.2d at 179. In syllabus point 1 of *Betts,* we specifically held:

> Where, in a criminal case, the defendant moves for a mistrial on the basis of reversible error not arising from evidentiary insufficiency or prosecutorial or judicial overreach and the mistrial is granted, jeopardy does not ordinarily bar a retrial, because the mistrial motion is functionally equivalent to an appeal based on the same error.

■ In the case now before us, the defendant elected to seek to terminate the proceedings against him. Therefore, a "manifest necessity" standard will not be applied.

A reading of the transcript of the appellant's first trial does not support his contention that the mistrial was declared *sua sponte.* Counsel for the appellant made a motion for mistrial and at no time did he withdraw that motion. Rather, appellant's counsel urged the court to continue the trial, and then in the event of a guilty verdict, to declare a mistrial.

In *Betts, supra,* we discussed the defendant's option to move for a mistrial or make a proper objection and continue the trial, in the face of trial error. There, we recognized the defendant's prerogative to obtain a jury determination of the case and, if convicted, appeal the error. 165 W.Va. at 84, 267 S.E.2d at 179. We noted that "[t]he preservation of this option for the defendant to continue the trial accords recognition to his valued right to have his case considered by the same tribunal." *Id.*

In the case of trial error, a reversal on appeal will not prevent a retrial under double jeopardy. *Thus, if the defendant wishes to assert this same error at trial*

*with a motion for mistrial, or a post-trial motion for new trial and it is granted, a further trial should not be precluded.*

*Id.,* 165 W.Va. at 84, 267 S.E.2d at 179–80 (emphasis added).

A decision of the Supreme Court of Alaska is instructive in this regard. *See MacPherson v. State,* 533 P.2d 1103 (Alaska), *cert. denied,* 423 U.S. 871, 96 S.Ct. 137, 46 L.Ed.2d 101 (1975). In *MacPherson,* the appellant sought to overturn her conviction on jeopardy grounds. During her first trial, appellant's counsel made a motion for mistrial, based on the court's alleged prejudice towards the defense. 533 P.2d at 1103. However, after the court's declaration of mistrial, defense counsel indicated that the court's reasons for declaring the mistrial were its [the court's] own, rather than based on the objections of the defense. *Id.* at 1105. The trial court responded that his reasons for declaring a mistrial were based precisely on the same objections which prompted defense counsel's motion. For the record, the judge characterized the mistrial as being declared *sua sponte.*

In holding that the trial court's ruling was made in response to the motion of defense counsel, the Supreme Court of Alaska noted that "[a]t no point did defense counsel unequivocally move to withdraw his motion, object to the trial court's stated intention to declare a mistrial or object to the actual grant of a mistrial." *Id.* at 1106. Based on the foregoing, the Court held:

> Once defense counsel invited the court to grant the relief of a mistrial, he was under a duty not only not to mislead the trial court, but also to clearly reveal that he desired to withdraw his motion and would object to the discharge of the jury. Thus, the mistrial must be characterized as being at the request of defense counsel, and therefore reprosecution is not prohibited.

*Id.*

Accordingly, in light of the foregoing and our implicit holding in *Betts, supra,* we conclude that where a defendant moves for

a mistrial and fails to withdraw that motion before the motion is granted by the trial court, the trial court's declaration of the mistrial cannot be characterized as *sua sponte*, when the record does not disclose an objection by the defendant to the trial court's action. Thus, further prosecution of the defendant under the above circumstances does not offend jeopardy principles embodied in the federal and state constitutions. *U.S. Const.* amend. V; *W.Va.Const.* art. III, § 5.

The appellant also asserts that the mistrial in the first trial resulted from prosecutorial overreach and, therefore, the second trial should be barred.

The Supreme Court of the United States has recently clarified the standard under which jeopardy will not bar retrial where a defendant moves for and obtains a mistrial based on prosecutorial or judicial misconduct. *See Oregon v. Kennedy,* 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982).[14] In *Kennedy,* the trial court granted the defendant's motion for mistrial based on the following exchange similar to the exchange that prompted the motion in the case before us: " 'Prosecutor: Have you ever done business with the Kennedys? 'Witness: No, I have not. 'Prosecutor: Is that because he is a crook?' " *Id.* at 669, 102 S.Ct. at 2086, 72 L.Ed.2d at 420. After a subsequent hearing on the mistrial motion, the trial court determined that the prosecutor had not intended to cause a mistrial, and jeopardy would not bar retrial.

The Oregon Court of Appeals accepted the trial court's finding that the prosecutor had not intended to cause a mistrial; however, the Court of Appeals sustained the defendant's jeopardy claim, holding that the prosecutor's conduct constituted "overreaching." *Id.* at 670, 102 S.Ct. at 2086, 72 L.Ed.2d at 421.

Considering this issue on appeal, the Supreme Court of the United States addressed the standard under which prosecutorial misconduct would bar retrial of a defendant on jeopardy grounds. Justice Rehnquist, writing for the majority, emphasized the need for a uniform standard to determine whether prosecutorial misconduct triggers the jeopardy bar to a second trial:

> [A] standard that examines the intent of the prosecutor, though certainly not entirely free from practical difficulties, is a manageable standard to apply. *It merely calls for the court to make a finding of fact.* Inferring the existence or non-existence of intent from objective facts and circumstances is a familiar process in our criminal justice system. When it is remembered that resolution of double jeopardy questions by state trial courts are reviewable not only within the state court system, but in the federal court system on habeas corpus as well, the desirability of an easily applied principle is apparent.

(emphasis added). *Id.* at 675, 102 S.Ct. at 2089, 72 L.Ed.2d at 424.

On the merits of the case, the Court determined that jeopardy did not bar the defendant's reprosecution. The majority emphasized the trial court's undisputed finding that the prosecutor in no way intended to provoke the defendant's mistrial motion. In that regard, the Court specifically held that the circumstances under which a criminal defendant who has successfully moved for mistrial is entitled to invoke the bar of jeopardy in a second effort to try him are limited to those cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial. *Id.* at 679, 102 S.Ct. at 2091, 72 L.Ed.2d at 427.[15]

---

**14.** Prior to its holding in *Kennedy, supra,* the Court had espoused varying standards under which prosecutorial misconduct leading to mistrial would bar reprosecution. *See, e.g., Oregon v. Kennedy,* collecting cases, 456 U.S. at 673–79, 102 S.Ct. at 2088–91, 72 L.Ed.2d at 423–27.

**15.** *See also United States v. Wentz,* 800 F.2d 1325, 1327 (4th Cir.1986) (question of prosecutorial provocation is a question of fact, and finding may not be set aside unless clearly erroneous).

■ We adopt the Supreme Court's view in *Kennedy* and accordingly hold that when a mistrial is granted on motion of the defendant, unless the defendant was provoked into moving for the mistrial because of prosecutorial or judicial conduct, a retrial may not be barred on the basis of jeopardy principles. *Oregon v. Kennedy*, 456 U.S. 667, 679, 102 S.Ct. 2083, 2091, 72 L.Ed.2d 416, 427 (1982).

■ In the case before us, as in *Kennedy*, the prosecutor made a prejudicial remark in front of the jury. Similarly, in both cases, the trial court found, under the circumstances, that there was no intent on the part of the prosecutor to cause a mistrial.

Pursuant to our holding in *State ex rel. Betts v. Scott, supra*, and the United States Supreme Court's ruling in *Oregon v. Kennedy, supra*, the trial court was correct in concluding that jeopardy did not bar the appellant's retrial.

For the foregoing reasons, the judgment of the Circuit Court of Mercer County is affirmed.

Affirmed.