380 S.E.2d 676

**STATE of West Virginia**

v.

**David DESKINS.**

No. 18529.

Supreme Court of Appeals of
West Virginia.

April 6, 1989.

J.C. Powell and Dennis Lewis, Hardman and Powell, Parkersburg, for David Deskins.

Harry G. Deitzler, Pros. Atty. Wood County, Parkersburg, for the State.

PER CURIAM:

Donald Deskins appeals from a jury verdict in the Circuit Court of Wood County finding him guilty of the murder of Donald Quinby and sentencing him to the State Penitentiary for life with a recommendation of mercy. Mr. Deskins made several confessions to the police; two of which were used during cross-examination to impeach his testimony. Among his assignments of error, Mr. Deskins argues his statements, made after he had requested the assistance of counsel, should have been suppressed for all purposes. We find no merit in his assignments of error and affirm his conviction.

I

Donald Quinby was shot and killed on February 27, 1985 in a secluded area outside Parkersburg, West Virginia. Mr. Deskins and Michael E. Cadwallader were connected to the murder by certain circumstantial evidence.[1] Before February 27,

---

1. Michael E. Cadwallader, in a separate earlier trial, was convicted of the murder of Mr. Quin-

1985, both had been seen with the victim; on February 27, 1985, both had purchased a shotgun, the murder weapon. Two empty pop cans, one with Mr. Deskins's fingerprints, were found at the murder scene. Later on February 27, 1985, Mr. Deskins used the victim's credit card to purchase gas for the victim's car outside Huntington, West Virginia. After February 27, 1985, Mr. Deskins invited some of his friends to join him and Mr. Cadwallader on a vacation trip to Florida using the victim's car. Mr. Deskins continued to use the victim's car and credit cards on the Florida trip.

In Florida, Mr. Deskins and Mr. Cadwallader separated and Mr. Deskins remained in the Daytona Beach area until June 30, 1985, when he was arrested on unrelated charges. After his arrest and before his return to West Virginia, Mr. Deskins made three statements to the police without the presence of counsel. The first confession, made on June 30, 1985, was suppressed for all uses because the trial court ruled it involuntary. The second confession, the result of police initiated questioning, was made on July 2, 1985 after Mr. Deskins requested assistance of counsel at his arraignment on July 1, 1985 and when his "waiver sheet" also indicated his desire for counsel. The trial court held that the second confession was admissible only to cross-examine or impeach. The third confession, made on July 19, 1985, although held admissible by the court, was used only for impeachment purposes.

Mr. Deskins contends that the trial court violated his constitutional rights when he admitted his second and third confessions for the limited purpose of impeachment. Neither statement was admitted into evidence in the State's case-in-chief. Mr. Deskins, testifying in his own defense, mentioned both statements briefly on direct examination. Mr. Deskins testified that although part of one statement was untrue, the rest of the statements were substantially accurate. In his own defense, Mr. Deskins contended that Mr. Cadwallader, acting alone and without his knowledge or consent, shot and killed Mr. Quinby and then threatened him if he did not follow Mr. Cadwallader's instructions. Mr. Deskins's credibility was a major consideration during the trial and the prosecutor used both statements to impeach his credibility.

On appeal Mr. Deskins argues that since both statements were taken in violation of his rights under the fifth and sixth amendments of the U.S. *Constitution*, the confessions should have been suppressed for all purposes including impeachment.

██ In Syllabus Point 1, *State v. Randle*, 179 W.Va. 242, 366 S.E.2d 750 (1988) we, again, reiterated that a voluntary confession can be used for impeachment purposes.

"Where a person who has been accused of committing a crime makes a voluntary statement that is inadmissible as evidence in the State's case in chief because the statement was made after the accused had requested a lawyer, the statement may be admissible solely for impeachment purposes when the accused takes the stand at his trial and offers testimony contradicting the prior voluntary statement knowing that such prior voluntary statement is inadmissible as evidence in the State's case in chief." Syllabus Point 4, *State v. Goodmon*, 170 W.Va. 123, 290 S.E.2d 260 (1981).

*See State v. Wilder*, 177 W.Va. 435, 352 S.E.2d 723 (1986); *State v. Williams*, 171 W.Va. 556, 301 S.E.2d 187 (1983); *State v. Simmons*, 172 W.Va. 590, 309 S.E.2d 89 (1983). The purpose of allowing the use of a voluntary prior statement for impeachment is to assure the veracity of the accused testifying in his own behalf.[2] The

by and was sentenced to the State Penitentiary for life.

**2.** Mr. Deskins argues briefly that both statements should be considered inadmissible because they are the "fruit of the poisonous tree." We note that both statements are "independent of or distinct from the original confession." text,

171 W.Va. at 558, 301 S.E.2d at 189 (1983). The interrogations were separated in time; the first statement, ruled involuntary, was given on June 30, 1985; the second, on July 2, 1985; and the third, on July 19, 1985. Different officers were present for each confession: the first was given to the Holly Hill, Florida Police Department;

U.S. Supreme Court in *Harris v. New York*, 401 U.S. 222, 225, 91 S.Ct. 643, 645, 28 L.Ed.2d 1 (1971) said that the privilege to testify is one's own defense "cannot be construed to include the right to commit perjury" and the use of prior voluntary statements for impeachment purposes was nothing more than the utilization of traditional truth-testing devices of the adversarial process. *See also Oregon v. Hass*, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975); *Michigan v. Jackson*, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986). We find that the use of Mr. Deskins's prior voluntary statements for impeachment was not a violation of Mr. Deskins's rights.

## II

Mr. Deskins also claims that the trial court erred in not excusing certain jurors. Specifically Mr. Deskins argues that two jurors should have been excused because of previous law enforcement employment; five, because of a belief that the accused had to prove his innocence; and one, because of his close relationship to a law enforcement agency.

■ Previous employment in a law enforcement agency does not automatically exclude a juror. In Syllabus Point 3, *State v. Beckett*, 172 W.Va. 817, 310 S.E.2d 883 (1983) we stated:

"In a criminal case it is reversible error for a trial court to overrule a challenge for cause of a juror who *is* an employee of a prosecutorial or enforcement agency of the State of West Virginia." Syllabus Point 5, *State v. West*, 157 W.Va. 209, 200 S.E.2d 859 (1973). [Emphasis added].

Neither of the jurors was a current employee of a prosecutorial or enforcement agency of the State. One juror had served in the military police two years about 1969 and the other had been a police officer in

Florence, South Carolina between 1974 and 1976. Both jurors indicated that they felt able to make an impartial decision.

■ The jurors who originally indicated that they thought the accused had to prove his innocence, indicated in further questioning that they understood the concept of innocent until proven guilty and would follow the instructions of the court. In Syllabus Point 5, *State v. Beckett*, 172 W.Va. 817, 310 S.E.2d 883 (1983) we stated:

"Jurors who on *voir dire* of the panel indicate possible prejudice should be excused, or should be questioned individually either by the court or by counsel to precisely determine whether they entertain bias or prejudice for or against either party, requiring their excuse." Syllabus Point 3, *State v. Pratt*, 161 W.Va. 530, 244 S.E.2d 227 (1978).

On *voir dire* the jurors were questioned by counsel for Mr. Deskins on the meaning of a grand jury indictment. Four of the jurors indicated some confusion about the weight given to the indictment.[3] The trial court questioned each juror individually and, based on the additional information, determined that each juror understood and would follow the trial court's instructions including the concept of innocent until proven guilty.

■ The final juror challenged because of a close relationship to a law enforcement agency was a county commission employee who was an occasional jail maintenance man. In *Beckett, supra,* we attempted to determine the degree of closeness to the law enforcement agency that mandated disqualification for cause. Closely related relatives and staff members were automatically disqualified. *Id.* But a prospective juror's consanguinial, marital or social relationship to an employee of a law enforcement agency allowed for further inquiry into possible prejudice or bias. *Id.* The

---

the second, to Detective L.H. Willis of the Daytona Beach Police Department; and the third, to West Virginia Troopers K.O. Adkins and J.P. Bragg. The record contains no indication that Mr. Deskins was highly amenable to suggestion. Thus the record contains several factors which indicate the lack of a causative link connecting the confessions. *Id.* 171 W.Va. at 558, 301

S.E.2d at 189–190. *See State v. Hall*, 179 W.Va. 398, 369 S.E.2d 701 (1988).

**3.** The record indicates that one juror challenged by Mr. Deskins because of his alleged belief, did not place any burden of proof for innocence upon the defendant.

trial court determined after questioning the potential juror that the juror's employment had not led to any prejudice or bias. In Syllabus Point 3, *State v. Brown*, 177 W.Va. 633, 355 S.E.2d 614 (1987), we reiterated our basic test to determine juror qualification.

" 'The true test as to whether a juror is qualified to serve on the panel is whether without bias or prejudice he can render a verdict solely on the evidence under the instructions of the court.' Syl. pt. 1, *State v. Wilson*, 157 W.Va. 1036, 207 S.E.2d 174 (1974)." Syllabus Point 4, *State v. Wade*, 174 W.Va. 381, 327 S.E.2d 142 (1985).

*See State v. Worley*, 179 W.Va. 403, 369 S.E.2d 706 (1988).

The trial court questioned each of the challenged jurors and in all cases the jurors said that they had not formed an opinion and would follow the instructions of the court.

We find that the trial court's determination that certain jurors should not be excused based on their answers in individual *voir dire* does not constitute an abuse of discretion.

### III

■ The next assignment of error relates to the admission of two photographs taken of the murder scene on April 30, 1985, approximately two months after the murder. The record reflects that Mr. Deskins's attorney did not object to the photographs because of the seasonal changes between the murder and the photographs; rather, Mr. Deskins's attorney objected to certain markings on the photographs. The trial court allowed additional information to be presented to the jury on how the photographs were marked.

In Syllabus Point 2, *State v. Dunn*, 162 W.Va. 63, 246 S.E.2d 245 (1978), we stated: "As a general rule photographs of persons, things, and places, when duly verified and shown by intrinsic evidence to be faithful representations of the objects they purport to portray, are admissible in evidence as aids to the jury in understanding the evidence; and whether a

particular photograph or groups of photographs should be admitted in evidence rests in the sound discretion of the trial court and its ruling on the question of the admissibility of such evidence will be upheld unless it clearly appears that its discretion has been abused." Syl. pt. 1, *Thrasher v. Amere Gas Utilities Co.*, 138 W.Va. 166, 75 S.E.2d 376 (1953), *appeal dismissed*, 347 U.S. 910, 74 S.Ct. 478, 98 L.Ed. 1067 (1954).

*See Bennett v. Walton*, 170 W.Va. 283, 294 S.E.2d 85 (1982).

The record reflects that the trial court did not abuse his discretion when he admitted the photographs into evidence because the jury, aware of the dates of the photographs and how the photographs were marked, was able to determine their proper weight.

### IV

The next assignment of error concerns the trial court's decision to admit evidence of Mr. Deskins's flight. In Syllabus Point 6, *State v. Payne*, 167 W.Va. 252, 280 S.E.2d 72 (1981), (collecting cases at note 2) we stated:

In certain circumstances evidence of the flight of the defendant will be admissible in a criminal trial as evidence of the defendant's guilty conscience or knowledge. Prior to admitting such evidence, however, the trial judge, upon request by either the State or the defendant, should hold an *in camera* hearing to determine whether the probative value of such evidence outweighs its possible prejudicial effect.

*See State v. Harper*, 179 W.Va. 24, 365 S.E.2d 69 (1987); *State v. Jennings*, 178 W.Va. 365, 359 S.E.2d 593 (1987).

■ In the present case the trial judge held an *in camera* hearing during which the prosecutor indicated that the flight evidence would be limited to the time Mr. Deskins spent in Florida after he was informed by a telephone call with his father that he was wanted. Mr. Deskins testified at the *in camera* hearing that he knew he was charged with a crime and he was hid-

ing from the law.[4] Based on the hearing the trial court found that the State had met its burden of proof that the evidence of flight was more probative than prejudicial and therefore admitted evidence of flight. We find the trial court did not abuse his discretion in admitting evidence of flight.

## V

■ The next assignment of error concerns the nature of the disclosure of a witness's testimony. Kenneth Miller, a witness for the State, was a hitchhiker picked up on the way to Florida who spent several days in the company of Mr. Deskins and Mr. Cadwallader. Mr. Deskins claims that the State failed to provide adequate disclosure because the information provided was "a copy of the voluminous CAD-WALLADER trial transcript, but ... no other information as to what Petitioner's [sic] statements would be offered at trial." In Syllabus Point 2 of *State v. Grimm*, 165 W.Va. 547, 270 S.E.2d 173 (1980) we stated:

> When a trial court grants a pre-trial discovery motion requiring the prosecution to disclose evidence in its possession, non-disclosure by the prosecution is fatal to its case where such non-disclosure is prejudicial. The non-disclosure is prejudicial where the defense is surprised on a material issue and where the failure to

make the disclosure hampers the preparation and presentation of the defendant's case.

*See State v. Johnson*, 179 W.Va. 619, 371 S.E.2d 340 (1988); *State v. Miller*, 178 W.Va. 618, 363 S.E.2d 504 (1987); *State v. Thompson*, 176 W.Va. 300, 342 S.E.2d 268 (1986); *State v. Bennett*, 176 W.Va. 1, 339 S.E.2d 213 (1985); *State v. Duell*, 175 W.Va. 233, 332 S.E.2d 246 (1985). The record indicates that the index of Mr. Cadwallader's trial transcript shows Mr. Miller's testimony to be on pages 764A–796. The trial court sought to assure that Mr. Deskins was not prejudiced by the alleged non-disclosure and instructed the prosecutor to limit Mr. Miller's testimony to matters in the transcript and the disclosure. The record does not reflect any subsequent objection to Mr. Miller's testimony because of surprise or prejudice. We find that the disclosure was adequate given the limitations placed on Mr. Miller's testimony and that the non-disclosure, if any, neither surprised nor prejudiced the defense.

## VI

■ Mr. Deskins's next assignment of error concerns the refusal of the trial court to grant Michael Cadwallader immunity pursuant to *W.Va.Code*, 57–5–2 [1931] to encourage his testimony at the trial.[5] We

---

4. Mr. Deskins testified as follows:

Q Now you weren't running away from the law because of the commission of crime, were you?
A Yes.
Q You were?
A Yes.
Q Well, what crime had you committed that you were running away from the law for?
A The crime I committed is I was at the scene of a felony, and I know the State of West Virginia law that I am just as guilty as an accessory.
Q So you are saying that not only were you scared of Cadwallader all the time that you were going down to Daytona Beach, but you were also hiding from the law?
A Once I got there.
Q Oh, you weren't hiding from the law on the way down?
A In a way, I didn't have a choice on the way down.
Q But, in other words, you are saying you would have gone anyway because you were scared of the law?

A No, sir.
Q So you began running from the law after Cadwallader had been caught?
A Yes, sir.

5. *W.Va.Code*, 57–5–3 [1931] provides:

In any criminal proceeding no person shall be excused from testifying or from producing documentary or other evidence upon the ground that such testimony or evidence may criminate or tend to criminate him, if the court in which he is examined is of the opinion that the ends of justice may be promoted by compelling such testimony or evidence. And if, but for this section, the person would have been excused from so testifying or from producing such evidence, then if the person is so compelled to testify or produce other evidence and if such testimony or evidence is self-criminating, such self-criminating testimony or evidence shall not be used or receivable in evidence against him in any proceeding against him thereafter taking place other than a prosecution for perjury in the giving of such evidence, and the person so compelled to

note, other than Mr. Deskins's supposition that Mr. Cadwallader's testimony would exonerate him, the record contains no such information. In fact Mr. Cadwallader testified in his own defense at his separate trial that he was not present at the murder scene.

In Syllabus Point 3, *State v. Pennington*, 179 W.Va. 139, 365 S.E.2d 803 (1987), we stated:

A prosecution witness who has purportedly been afforded immunity from prosecution pursuant to *W.Va.Code*, 57–5–2 [1931], and who testifies against a defendant in a criminal proceeding is the only person who may assert the protection of that statute in regard to that grant of immunity. *The defendant, however, in that criminal proceeding may not assert irregularities in regard to the granting of that immunity from prosecution.* [Emphasis added].

*W.Va.Code*, 57–5–2 [1931] does not apply in this case because the grant of immunity is limited to "protect only the witness called on the prosecution's behalf." *Id.* 179 W.Va. at 146, 365 S.E.2d at 810. In *Pennington*, we reaffirmed our holding in *State v. Abdella*, 139 W.Va. 428, 436, 82 S.E.2d 913, 921 (1954) which said, "No one is protected under [W.Va.Code 57–5–2 (1931)] except the witness who is called on behalf of the state to testify...." Here, as in *Pennington, supra*, we decline to afford the protection of these statutory provisions to the appellant.

## VII

■■■■■ The next assignment of error concerns the trial court's refusal to allow to the jury to consider a transcript of the testimony of Thomas Frazier who was unavailable as a witness.[6] During the earlier trial of Mr. Cadwallader, Mr. Frazier provided some exculpatory evidence in an answer to one question. Rule 804, *W.Va. R.Evid.* permits the following testimony of an unavailable defendant to be admitted:

Testimony given as a witness at another hearing or the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

Because Mr. Frazier's testimony had been directed against Mr. Cadwallader, the prosecution did not in this case have a similar motive—namely to develop testimony against Mr. Deskins. Further the record indicates that no attempt was made to develop the testimony because the one answer was not explored. We find that because Rule 804 does not apply to Mr. Frazier's testimony, the trial court did not err in refusing to admit the transcript.

## VIII

■■■■ Mr. Deskins's next assignment of error concerns the jury instructions given and refused. Of the instructions appealed, Mr. Deskins makes no specific objections to two instructions given and to eleven instructions refused. The three refused in-

testify or furnish evidence shall not be prosecuted for the offense in regard to which he is so compelled to testify or furnish evidence, and he shall have complete legal immunity in regard thereto.

6. In his reply brief, Mr. Deskins questions the adequateness of State's disclosure of Mr. Frazier's address. In testifying during Mr. Cadwallader's trial, Mr. Frazier gave a different address than the one provided by the State to Mr. Deskins. The State provided Mr. Deskins with a copy of the transcript approximately one and one half months before the trial. Non-disclo-

sure is prejudicial to a defendant when the defense is either surprised on a material issue or harmed in the preparation and presentation of their case. See Syllabus Point 2, *Grimm, supra.*

In the present case the prosecution provided the address it had and Mr. Cadwallader's trial transcript. Further, the record indicates that Mr. Frazier could not be located at either address and was reported to have moved to Georgia. We find that the disclosure was adequate and that the preparation and presentation of Mr. Deskins's case was not harmed.

structions, specifically mentioned by Mr. Deskins, are defendant's instructions number one—accessory after the fact, number two—aider, abetter and shared intent, and number four—elements of coercion and compulsion. In Syllabus Point 8, *State v. Hall*, 171 W.Va. 212, 298 S.E.2d 246 (1982) we stated:

An instruction to the jury is proper if it is a correct statement of the law and if sufficient evidence has been offered at trial to support it.

*See* Syllabus Point 1, *State v. Combs*, 175 W.Va. 765, 338 S.E.2d 365 (1983); Syllabus Point 5, *Jenrett v. Smith*, 173 W.Va. 325, 315 S.E.2d 583 (1983); Syllabus Point 1, *State v. Gum*, 172 W.Va. 534, 309 S.E.2d 32 (1983).

Furthermore, in Syllabus Point 4, *Jenrett v. Smith*, 173 W.Va. 325, 315 S.E.2d 583 (1983), we stated:

" 'It is not error to refuse to give an instruction to the jury, though it states a correct and applicable principle of law, if the principle stated in the instruction refused is adequately covered by another instruction or other instructions given.' Syl. pt. 2, *Jennings v. Smith*, 165 W.Va. 791, 272 S.E.2d 229 (1980), *quoting*, syl. pt. 3, *Morgan v. Price*, 151 W.Va. 158, 150 S.E.2d 897 (1966)." Syl. pt. 2, *McAllister v. Weirton Hospital Co.*, 173 W.Va. 75, 312 S.E.2d 738 (1983).

Defendant's instruction number one was an incomplete statement of the law and without evidence to support it. Defendant's instruction number two was cumulative because another instruction properly instructed the jury regarding necessary intent. The critical elements of defendant's instruction number four were incorporated into another instruction that was given to the jury. We have carefully reviewed the record with all the jury instructions in mind and find that the appellant's objections either specific or general are without merit.

## IX

Mr. Deskins's next assignment of error concerns the sufficiency of evidence. In Syllabus Point 1, *State v. Starkey*, 161 W.Va. 517, 244 S.E.2d 219 (1978), we stated our standard for appellate review:

In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evidence is to be viewed in the light most favorable to the prosecution. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done.

*See State v. Masters*, 179 W.Va. 752, 373 S.E.2d 173 (1988); *State v. Perdue*, 179 W.Va. 719, 372 S.E.2d 636 (1988); *Hall, supra.*

Our rule in circumstantial evidence cases, such as in this case, is stated in Syllabus Point 2 of *State v. Dobbs*, 163 W.Va. 630, 259 S.E.2d 829 (1979):

Circumstantial evidence will not support a guilty verdict, unless the fact of guilt is proved to the exclusion of every reasonable hypothesis of innocence; and circumstances which create only a suspicion of guilt but do not prove the actual commission of the crime charged, are not sufficient to sustain a conviction.

*See* Syllabus Point 2, *Masters, supra;* Syllabus Point 1, *State v. Welker*, 178 W.Va. 47, 357 S.E.2d 240 (1987); Syllabus Point 1, *State v. Craft*, 165 W.Va. 741, 272 S.E.2d 46 (1980).

Based on our careful examination of the record, we find that sufficient evidence was introduced at trial to convince an impartial jury of the guilt of the defendant beyond a reasonable doubt, and that the evidence was not manifestly inadequate. Furthermore, we find that the jury could rationally conclude that the circumstantial evidence created more than only a

suspicion of guilt and was sufficient to sustain a conviction.

We have examined the record bearing in mind Mr. Deskins's other assignment of error, namely, that the prosecuting attorney acted improperly and find it to be without merit.[7]

**7.** The record does not substantiate the following assertions of improper conduct by the prosecuting attorney in: (1) questioning the witnesses; (2) providing the jury with information about Mr. Cadwallader's previous trial; (3) allowing the jury to view an inadmissible picture; and, (4) ridiculing opposing counsel. The record indicates that the trial court immediately took proper steps to assure a fair trial concerning (1) use of a calendar, (2) replaying a portion of a tape, and (3) information about other crimes.

The record does not reflect that counsel for Mr. Deskins made any objection at trial concerning (1) a nickname given to Mr. Deskins by a witness, (2) questions regarding Mr. Deskins's sexual relationships, and (3) the closing statement of the prosecutor. In Syllabus Point 7 of *State v. Cirullo,* 142 W.Va. 56, 93 S.E.2d 526

For the above stated reasons, we affirm the judgment of the Circuit Court of Wood County.

Affirmed.

(1956) we required an objection to be made at trial, in most circumstances, before we would consider the matter. *See State v. Grubbs,* 178 W.Va. 811, 364 S.E.2d 824 (1987); Syllabus Point 2, *State v. Trogdon,* 168 W.Va. 204, 283 S.E.2d 849 (1981). Our traditional rule regarding non-jurisdictional error is stated in Syllabus Point 6 of *State v. Byers,* 159 W.Va. 596, 224 S.E.2d 726 (1976):

This Court will not consider an error which is not preserved in the record nor apparent on the face of the record.

*See* Syllabus Point 11, *State v. McFarland,* 175 W.Va. 205, 332 S.E.2d 217 (1985); *Bennett v. 3 C Coal Co.,* 180 W.Va. 665, 379 S.E.2d 388 (1989).

We find that assertions that the the prosecutor acted improperly are not supported by the record.