# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs)  No. 15-0468** (Raleigh County 12-F-137-B)

**Michael Darnell Harvey,**
**Defendant Below, Petitioner**

**FILED**

**June 17, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Michael Darnell Harvey, by counsel Sidney H. Bell, appeals his convictions of five counts of wanton endangerment involving a firearm and one count of retaliation against a witness in the Circuit Court of Raleigh County. By order entered on April 13, 2015, the circuit court sentenced petitioner to concurrent terms of two years in prison for each wanton endangerment count, to run consecutively with a prison term of one to ten years for the retaliation against a witness count.[1] Respondent State of West Virginia, by counsel Gilbert Dickey and Katlyn Miller, filed a response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

### Factual and Procedural Background

In May of 2011, petitioner was indicted on five counts of wanton endangerment with a firearm and one count of retaliation against a witness. Petitioner was accused of firing multiple shots from a vehicle toward Christopher Hawthorne and his mother, Pamela Pannell, as petitioner drove by Mr. Hawthorne's residence. None of the bullets struck anyone. The indictment also alleged that petitioner's conduct was in retaliation against Mr. Hawthorne who had testified before a federal grand jury a month earlier; that testimony led to the arrest of Corey Dowdin, a friend of petitioner.[2] The charges against petitioner proceeded to a jury trial in April of 2013. However, the circuit court granted petitioner's motion for a mistrial after the jury reported that they were unable to reach a verdict.

---

[1]The circuit court originally sentenced petitioner by order entered on February 21, 2014. Petitioner was re-sentenced for the purpose of permitting the current appeal.

[2]The State indicates that Mr. Hawthorne had been cooperating with a federal investigation into a drug trafficking conspiracy.

1

Petitioner was retried in November of 2013. The evidence at the second trial was that Mr. Hawthorne, who was outside of his home, saw petitioner drive by his home three or four times in a gold Mitsubishi and then saw petitioner stop, lean across the car, and fire in his direction. Mr. Hawthorne testified that he looked petitioner "dead in the eye" during the shooting, and that after firing, petitioner drove away. Immediately after the shooting, Mr. Hawthorne called Detective Jason McDaniel, a narcotics officer with the Beckley Police Department, and identified petitioner as the shooter. In addition, Ms. Pannell called 911, but was very emotional and unable to identify the shooter or the vehicle involved over the phone at that time. At trial, however, she identified petitioner as the shooter and testified that he fled in a gold Mitsubishi.

The police responded to Mr. Hawthorne's home. Mr. Hawthorne again identified petitioner as the shooter, and told the police that petitioner fled in a gold Mitsubishi. The police located petitioner at the home of Mr. Dowdin's mother and a gold Mitsubishi was parked nearby. When the police apprehended petitioner, they recovered a 9 millimeter Glock pistol from him. The police also took petitioner's clothing and the Mitsubishi as evidence, both of which were tested and revealed the presence of gunshot residue. The police also searched petitioner's home and seized from his bedroom a magazine for a .45 caliber Glock pistol, which contained several live rounds. At the scene of the shooting, the police recovered two bullets – one from a tree in Mr. Hawthorne's yard and one from the siding of a nearby home.

The State's firearm expert examined the two bullets and concluded that both rounds had been fired from a .45 caliber GAP or a .45 caliber ACP Glock pistol. She also testified that the live rounds recovered in petitioner's bedroom had the same physical features as the bullets found at the scene of the shooting.

At trial, petitioner testified and admitted to be being good friends with Mr. Dowdin and to believing that Mr. Hawthorne had been involved in Mr. Dowdin's arrest. He further admitted to being in the area of Mr. Hawthorne's residence around the time of the shooting. However, he claimed that he was there to collect money from a friend who also lived in the neighborhood. He denied that he shot at Mr. Hawthorne.

After petitioner testified, his counsel advised the court that he planned to call another witness, John Boyden, to testify. The defense had properly served a subpoena for Mr. Boyden to testify in the second trial. However, defense counsel advised the circuit court that he had spoken with Mr. Boyden the previous evening, and that Mr. Boyden was unable to testify as he was in another state on a hunting trip. When the circuit court asked defense counsel what he proposed to do given Mr. Boyden's absence, defense counsel chose to rest his case without calling Mr. Boyden as a witness.

Mr. Boyden had testified at petitioner's first trial that he was coaching softball near Mr. Hawthorne's residence at the time of the shooting. He testified that he heard gunshots and he saw an individual run around a house and through a back door; and that this person was carrying a long object – what looked like a rifle – with a shirt draped over it. He also testified that he was

2

about seventy-five yards away and could not definitively identify the object or the person.[3] The State's firearm expert testified that most rifles that could fire the rounds in question would be much shorter than a traditional rifle. Additionally, she testified that she was unaware of any rifle that would leave the markings that caused her to conclude that recovered bullets were fired from the Glock pistol.

The jury convicted petitioner on all six charges in the indictment. The circuit court sentenced petitioner to concurrent terms of two years in prison for each wanton endangerment count, to run consecutively with a prison term of one to ten years for the retaliation count. Petitioner now appeals to this Court.

**Discussion**

On appeal, petitioner raises seven assignments of error,[4] which can be distilled down to the following four issues: (1) whether the circuit court erred by not excluding all of the physical evidence that had been in the custody of a discredited evidence technician; (2) whether the

---

[3]Petitioner attributes the lack of a guilty verdict at the first trial to Mr. Boyden's testimony.

[4]Petitioner's assignments of error are as follows: (1) the trial court erred by admitting into evidence exhibits that had been in the exclusive care, custody, and control of a discredited evidence room technician who was convicted of a felony offense for tampering with, removing, and stealing evidence that had also been placed in her custody at the Beckley Police Department. The physical evidence in this case was entrusted to her care and custody in the same period during which she committed those criminal offenses; (2) the trial court erred by finding at the first trial that the State had established a sufficient chain of custody of gunshot residue evidence, ammunition, and clothing in the absence of any testimony from the actual custodian of that evidence at the Beckley Police Department; (3) the trial court erred by permitting the State to present at the first trial the testimony of a material witness by video over the objection of the defendant and in violation of his right to confront the witnesses against him; (4) the trial court erred by denying a motion for judgment of acquittal in the absence of evidence that a reasonable juror could find the defendant guilty beyond a reasonable doubt. Petitioner asserts that this error was particularly egregious in regard to the charge of retaliation against a witness for participating in an official proceeding where there was no evidence establishing that the defendant's alleged offenses were committed for the purpose of retaliating against Christopher Hawthorne, the alleged victim named in the indictment; (5) the trial court erred by allowing the second trial to conclude without making an effort to compel the attendance of a material witness for the defendant or to have his prior testimony read to the jury. Petitioner asserts that the omission of this exculpatory testimony violated the defendant's rights under the Compulsory Process Clause and the Due Process Clause; (6) the trial court erred by failing to address the defendant directly in regard to the decision to rest his case without presenting the testimony of a material witness who had given exculpatory evidence at the first trial at which the jury was unable to reach a verdict; and (7) the trial court erred by permitting the retrial of the defendant when double jeopardy principles should have barred such retrial due to the clear insufficiency of the evidence at the first trial.

3

circuit court erred by failing to compel John Boyden to testify; (3) whether the evidence was sufficient to sustain the verdict; and (4) whether the second trial exposed petitioner to double jeopardy. For the reasons discussed more fully herein, we reject petitioner's arguments and find no error by the circuit court.

The first issue -- whether the evidence should have been excluded due to the conduct of the former evidence technician -- requires additional background. The shooting occurred on April 20, 2011. The physical evidence that was recovered by the police in the week following the shooting was stored at the Beckley Police Department, where Gabriella Brown served as an evidence technician. In August of 2012, it was discovered that Ms. Brown had stolen seventeen oxycodone pills from the evidence room; she thereafter entered a guilty plea in federal court as a result of the theft. There was no evidence that Ms. Brown had tampered with anything other than drugs. As a result of Ms. Brown's conduct, the State dismissed all drug cases from the time that she served as evidence technician.

Petitioner argues that all of the physical evidence in this case should have been excluded because it was under the care of Ms. Brown during a nine-day period, from April 20, 2011 to April 28, 2011. This Court has held that "[t]he preliminary issue of whether a sufficient chain of custody has been shown to permit the admission of physical evidence is for the trial court to resolve. Absent abuse of discretion, that decision will not be disturbed on appeal." Syl. Pt. 2, *State v. Davis*, 164 W.Va. 783, 266 S.E.2d 909 (1980). Petitioner likens the facts of the present case to those in *In re an Investigation of the West Virginia State Police Crime Laboratory, Serology Division,* 190 W.Va. 321, 438 S.E.2d 501 (1993), in which we addressed the misconduct of Fred Zain, the former director of the serology department at the State Crime Laboratory. However, contrary to the present matter, the Zain investigation revealed a long history of systematic fraud and falsification of evidence to obtain convictions. However, in the present case, the investigating officer testified at both trials that she found no evidence that Ms. Brown had abused her access to evidence of the type involved in this case. While we do not minimize Ms. Brown's misconduct, we find that her theft of opioids and consequent guilty plea do not warrant the relief petitioner seeks in this appeal, that is, throwing out evidence completely unrelated to Ms. Brown's misconduct.

Petitioner also complains about the gap in the chain of custody of the physical evidence given that Ms. Brown did not testify in the first trial. However, the record shows that she testified in petitioner's second trial that she did not tamper with the evidence at issue in the case. She further testified that she removed the evidence in this case from the evidence locker in the presence of a Drug Enforcement Agency special agent and transferred the evidence directly to him.[5] She also testified that the gunshot residue kits and clothing that had been tested for gunshot

---

[5] Petitioner disputes the circuit court's decision to allow the special agent to testify at the first trial via two-way video. However, petitioner provides no argument as to how this testimony violated his rights under the Confrontation Clause, undermined the chain of custody, or was otherwise unreliable. Accordingly, we find no error. *See Maryland v. Craig,* 497 U.S. 836 (1990) (holding that denial of face-to-face confrontation is permissible where reliability of testimony is otherwise assured).

residue came to her in sealed containers and remained sealed while in her possession. Accordingly, under *Davis*, we find that the circuit court did not abuse its discretion by allowing the evidence to be admitted at the second trial.

Petitioner's next argument is that the circuit court erred by failing to compel John Boyden to testify in the second trial. Petitioner contends that the circuit court violated his right to compulsory process under the Sixth Amendment of the United States Constitution and Article III, Section 14 of the West Virginia Constitution when it allowed his counsel to rest his case without the testimony of Mr. Boyden. Upon our review of the record in this case, we determine that petitioner has waived any objection to the court's failure to compel Mr. Boyden to testify. In syllabus point eight of *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995), we held as follows:

> Under the "plain error" doctrine, "waiver" of error must be distinguished from "forfeiture" of a right. A deviation from a rule of law is error unless there is a waiver. When there has been a knowing and intentional relinquishment or abandonment of a known right, there is no error and the inquiry as to the effect of a deviation from the rule of law need not be determined. By contrast, mere forfeiture of a right—the failure to make timely assertion of the right—does not extinguish the error. In such a circumstance, it is necessary to continue the inquiry and to determine whether the error is "plain." To be "plain," the error must be "clear" or "obvious."

In the present case, petitioner's counsel caused the court to issue a subpoena commanding Mr. Boyden to testify. Mr. Boyden did not appear in court pursuant to that subpoena, and the court asked counsel how he wished to proceed. Instead of exercising his right to compel Mr. Boyden to testify, counsel knowingly and intentionally relinquished that right, and opted to rest his case without Mr. Boyden's testimony.[6] Thus, according to *Miller*, petitioner has waived his argument and we need address it no further.

Third, petitioner argues that there was insufficient evidence to support his convictions. As support, petitioner first attacks the credibility of Mr. Hawthorne's testimony on the basis that he is a convicted drug dealer who had been cooperating with a federal investigation. Petitioner notes that Mr. Hawthorne estimated that petitioner fired nine shots at him, but police could locate only two bullets. Petitioner argues that if he had fired nine shots from his car, as Mr. Hawthorne testified, there would have been ejected shell casings in the car or on the street.

Petitioner also disputes Ms. Pannell's testimony on reliability grounds. He notes that Ms. Pannell could not identify the shooter or the shooter's vehicle during her call to 911, yet was able to do so at trial. Also, petitioner notes that Ms. Pannell insisted that Corey Dowdin also drove by the residence that day, despite being advised by defense counsel that he was incarcerated at the time.

---

[6]Without citing any applicable authority, petitioner's counsel also contends that the circuit court should have advised him of his right to compel testimony in the same fashion in which it would advise a defendant of his various rights prior to the acceptance of a guilty plea.

This Court has held that

> [a] criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

Syl. Pt. 3, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).

Upon our review of the record, we find that there was sufficient evidence to sustain petitioner's six convictions. Two eyewitnesses – Mr. Hawthorne and Ms. Pannell – testified under oath that petitioner stopped his car and fired multiple shots in their direction. The jury heard from Mr. Hawthorne and Ms. Pannell, and found them credible. Given our holding in *Guthrie,* we will not disturb the jury's credibility determination with respect to Mr. Hawthorne's and Ms. Pannell's testimony. Additionally, the evidence revealed that the shots placed three other individuals who were in the area at the time in a substantial risk of death or serious bodily injury. Specifically, at least one bullet struck the window of a house in which Judy Patterson was sleeping; at least one other bullet that struck Artie Maddox's car in his carport could have entered a basement window near where Mr. Maddox was at the time; and another shot went toward a home in which Mary Pannell was sleeping.

Moreover, there was ample evidence from which the jury could convict petitioner of retaliating against Mr. Hawthorne for his role in Mr. Dowdin's arrest. Petitioner's own testimony provided the basis for his conviction. Petitioner admitted that he and Mr. Dowdin were friends; that he was aware that Mr. Hawthorne had been cooperating in a drug investigation; and that he deduced that Mr. Hawthorne had something to do with Mr. Dowdin's arrest. Tellingly, in his cell phone contacts list, petitioner referred to Mr. Hawthorne as "F*ing Snitch."

Petitioner's final argument is that double jeopardy principles barred his retrial due to the clear insufficiency of the evidence at the first trial. Petitioner claims that, pursuant to *Evans v. Michigan,* 568 U.S. __, 185 L.Ed. 124, 133 S. Ct. 1069 (2013), the second trial never should have happened. Petitioner contends that, in *Evans*, the Supreme Court discussed circumstances in which retrial may be barred if the evidence at the first trial was insufficient to sustain a conviction, and draws a comparison to his case. Our review of *Evans* reveals a distinction with the present case, one that is fatal to petitioner's argument; in *Evans*, the trial court entered a directed verdict of acquittal following the prosecution's case-in-chief based upon its view that the prosecution had not provided sufficient evidence of a particular element of the offense, which was not actually a required element at all. In contrast, in the present case, petitioner sought and obtained a mistrial when the jury reported it was unable to reach a verdict.

Importantly, the State correctly notes that the record in this case is devoid of any claim by petitioner that his retrial violated double jeopardy. We have held that the defense of double jeopardy "must be raised by a special plea, and the failure to so plead will be treated as a waiver of such defense unless the former jeopardy relied upon is based upon the same indictment in the same court." Syl. Pt. 2, in part, *State v. Carroll*, 150 W.Va. 765, 149 S.E.2d 309 (1966). Even if we were to find that petitioner did not waive his double jeopardy argument, he fails to establish any error -- plain or otherwise -- with respect to his retrial. "When a mistrial is granted on motion of the defendant, unless the defendant was provoked into moving for the mistrial because of prosecutorial or judicial conduct, a retrial may not be barred on the basis of jeopardy principles." Syl. Pt. 8, *State v. Pennington*, 179 W.Va. 139, 365 S.E.2d 803 (1987) (citation omitted). In the present case, petitioner moved for a mistrial based on the failure of the jury to reach a verdict; there is no indication in the record that petitioner's motion was, in any way, predicated on prosecutorial or judicial misconduct. Furthermore, our review of the record does not cause us to find error in petitioner's retrial due to an alleged lack of evidence in the first trial.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** June 17, 2016

**CONCURRED IN BY:**

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II

7